UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| LOL Finance Company,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Paul Johnson & Sons Cattle Co., Inc., First National Bank of Omaha, Robert P. Johnson, Keri J. Maloley, John Doe and ABC Company,<br><br>　　　　Defendants. | Case No. 09-CV-3224-RGK<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY** |
| Paul Johnson & Sons Cattle Co., Inc.,<br><br>　　　　Third-Party Plaintiff,<br><br>v.<br><br>Maverick Feeders, Inc., Shon Sawyer and Julie Sawyer,<br><br>　　　　Third-Party Defendants. | |

**INTRODUCTION**

This case involves a priority dispute between three creditors over the proceeds from the sale of 3,397 head of cattle formerly owned by Third-Party Defendants. Plaintiff LOL Finance Company ("LOLFC") financed the purchase of the cattle and obtained a security interest in the cattle and proceeds. Third-Party Defendants retained LOLFC's sister company, Land O'Lakes Purina Feed LLC, doing business as 4-Square Cattle Services ("4-Square"), to provide them with consulting services for the cattle. The financing statement filed by LOLFC to perfect its security interest describes the collateral as all cattle whether now owned or hereinafter acquired by Third-

Party Defendants and "placed by [Third-Party Defendants] with [4-Square] under a Cattle Consulting Agreement . . . ."

Defendants Paul Johnson & Sons Cattle Co., Inc., Robert P. Johnson and Keri J. Maloley (hereinafter collectively referred to as "PJSCC Defendants") contend that the collateral description set forth in LOLFC's financing statement is legally insufficient. They claim that the term "placed" in the cattle industry has only one meaning, namely placement of cattle on feed at a feedlot. They argue that because Third-Party Defendants "placed" the cattle at issue at their feedlot, the cattle could not also be placed with 4-Square for cattle-consulting services.

The PJSCC Defendants have filed expert disclosures indicating that they intend to parade five purported experts before the jury to give identical testimony that the collateral description contained in LOLFC's financing statement is legally insufficient. More specifically, the expert disclosures indicate that the purported experts will each testify that the term "placed," as used in LOLFC's financing statement, can only mean placement of cattle on feed at a feedlot.

The proposed expert testimony should not be permitted for at least three reasons. First, the proposed testimony is nothing more than a legal opinion on which expert testimony should not be allowed, particularly from witnesses who lack any background to proffer such legal opinions. Second, identical or near-identical testimony from five separate purported expert witnesses would be cumulative, prejudicial and a waste of time and judicial resources. Finally, the reports submitted by the experts fail to satisfy the basic requirements of Fed.R.Civ.P. 26(a)(2)(B).

**ARGUMENT**

**I.   THE PJSCC DEFENDANTS' PURPORTED EXPERTS SHOULD NOT BE PERMITTED TO TESTIFY REGARDING THE LEGAL SUFFICIENCY OF LOLFC'S COLLATERAL DESCRIPTION.**

The question of whether a collateral description is legally sufficient is a question of law. See United States v. First Nat. Bank, 470 F.2d 944, 947 (8th Cir. 1973) (sufficiency of a collateral description in security agreement is an evidentiary question for the court); In re Johnson, 1973 U.S. Dist. LEXIS 15612 at *3 (D. Neb. 1973) (deciding, as a matter of law, that description of collateral in security agreement was sufficient); see also Tri-State Equipment, Inc. v. Allis Chalmers Credit Corp., 792 F.2d 967, 970 (10th Cir. 1986); In re Pickle Logging, Inc., 286 B.R. 181, 184 (Bankr. M.D. Ga. 2002) ("'The question of sufficiency of [a] description of [collateral] in a [recorded document] is one of law'"); In re John Oliver Co., Inc., 91 B.R. 643, 645 (Bankr. N.H. 1988) (sufficiency of collateral description is "a question of law"); Driggers v. Continental Grain Co., 435 S.E.2d 722, 722 (Ga. Ct. App. 1993); Citizens Nat. Bank of Evansville v. Wedel, 489 N.E.2d 1203, 1208 (Ind. Ct. App. 1986) ("In light of the purpose of the collateral description in a financing statement – to provide enough notice for further inquiry – we note the adequacy of the description in the financing statement is a question of law"); Valley Federal Savings Bank v. Stahl, 793 P.2d 851, 854 (N.M. 1990) ("Whether the description of the collateral is adequate is a question of law, not of fact").

Under Rule 702 of the Federal Rules of Evidence, purported expert testimony offering legal conclusions is inadmissible, especially when the witness is not qualified to render a legal opinion.

> Expert opinion testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. * * * The jury's role is limited to settling disputes as to predicate facts. See Arnott v. Mataya, 995 F.2d 121, 123-24 (8th Cir. 1993). * * * The legal conclusions

3

> were for the court to make. It was an abuse of discretion to allow the testimony.

Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995); Schmidt v. Magyari, 557 F.3d 564, 570 (8th Cir. 2009) (expert opinions regarding impermissible legal conclusions properly excluded); Kinder v. Acceptance Ins. Cos., 423 F.3d 899, 905 (8th Cir. 2005) ("When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements."); United States v. Ingle, 157 F.3d 1147, 1152 (8th Cir. 1998) (expert testimony on legal issue improper because it sought to supplant the role of the court); Estes v. Moore, 993 F.2d 161, 163 (8th Cir. Neb. 1993) (affirming exclusion of proposed expert testimony because "it was a statement of a legal conclusion.").

LOLFC's financing statement covers, in relevant part, "All cattle whether now owned or hereafter acquired by [Third-Party Defendants] and placed by [Third-Party Defendants] with 4-Square Cattle Management Services under a Cattle Consulting Agreement . . . ." (Docket No. 10 at 41) (emphasis added). The PJSCC Defendants' expert disclosures indicates that their purported experts will testify regarding the sufficiency of LOLFC's financing statement, arguing that the term "placed" in the cattle industry can only have one meaning (regardless of the context in which it is used), namely, placement of cattle on feed at a feedlot:

- Dr. Joe Peschel, animal nutritionist, is "expected to testify the Maverick Cattle were placed with Johnson Cattle Co., and no one else, and placing cattle is a process recognized and identified, both throughout the cattle industry, as involving putting cattle on feed with Johnson as occurred with respect to the cattle in question in this case. (Docket No. 134 at 2) (emphasis added);

- Dr. John Lawton, veterinarian, is expected to testify that, "The cattle at issue were 'placed' with Johnson cattle to be fed. Placements, the process of placing cattle on feed and what it means to place cattle. . . . Dr. Lawton is expected to testify that placement of cattle is a technical process, and to place cattle involves putting them in a customer feedyard where they are managed and cared for by the feedyard, not by someone else. Cattle are not placed within the meaning of that term in the industry if a distant party has some invoicing right as a result of a 'management agreement' . . ." (Id. at 4) (emphasis added);

4

- Brian Timmons, feedyard operator, is expected to testify that "the Maverick Feeders/Sawyer cattle were never 'placed' with any person or entity other than Johnson Cattle to be fed. He is aware [that] <u>placement of cattle involves a process of moving cattle to a feedyard</u>. When cattle are placed, they are accounted for by the USDA and reported in industry reports. <u>Placement does not occur unless the party with whom they are placed takes possession of the cattle and conducts the feeding operation</u> producing a market-ready beef animal for slaughter." (<u>Id.</u>) (emphasis added);

- Scott Foote, feedyard operator, is expected to testify identically to Mr. Timmons. (<u>Id.</u> at 5);

- Judith Ackland, certified public accountant, is expected to testify that, "<u>when cattle are 'placed,' they are physically put in the possession of a feedyard</u>. Cattle are not 'placed' in a paper transaction creating a circumstance in which an invoice might be sent for a financial management service associate with the cattle. Placements are physical processes permitting cattle to be accounted for. . . . Ms. Ackland . . . will testify . . ., as will the other witnesses, that the use of the term 'placed' in the security agreement of filings of LOL did not describe or include cattle placed with [PJSCC] because the Maverick/Sawyer cattle at the Johnson feedyard were 'placed' with it and no one else." (<u>Id.</u> at 6) (emphasis added).

The PJSCC Defendants' proposed expert testimony is impermissible. PJSCC's experts intend to opine that the term "placed" in the cattle industry solely and exclusively means cattle placed at a feedlot and that this is the definition that must be used when determining the sufficiency of LOLFC's financing statement. This argument fails for at least two reasons. First, the sufficiency of the financing statement is a legal question for the Court. The financing statement either is legally sufficient to place subsequent potential creditors on notice that further inquiry is necessary or it is not. <u>Wedel</u>, 489 N.E.2d at 1208. Expert testimony that purports to assist the jury in defining the meaning of the term "placed" in LOLFC's financing statement is irrelevant because that issue should be decided by the Court.

Second, the proposed testimony regarding the meaning of the word "placed" in the cattle industry—even if it was appropriate for the jury to consider—is not relevant to LOLFC's use of the phrase "placed by [Third-Party Defendants] with [4-Square] under a Cattle Consulting Agreement . . . ." in its financing statement. PJSCC attempts to interpret and provide expert

5

testimony on the meaning of the word "placed" in isolation from the phrase actually used by LOLFC in its financing statement. The general meaning of the term "placed" in the cattle industry is unimportant when LOLFC clearly indicated in its financial statement that it was claiming an interest in cattle "placed by [Third-Party Defendants] with [4-Square] under a Cattle Consulting Agreement . . . ." The general meaning of the term "placed" in the cattle industry is not relevant under Fed. R. Evid. 402 and would be prejudicial or confusing under Fed. R. Evid. 403. Accordingly, the Court should not permit the proposed expert testimony.

Furthermore, even if the Court were to conclude that expert testimony on this issue is permissible, none of the individuals identified by PJSCC have the requisite experience to proffer such legal opinions.

> When considering expert testimony, a district court must ensure that "all scientific testimony is both reliable and relevant." To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that <u>the expert is qualified to render the opinion</u> and that the methodology underlying his conclusions is scientifically valid." To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. Marmo, 457 F.3d at 757.

<u>Barrett v. Rhodia, Inc.</u>, 606 F.3d 975, 980 (8th Cir. 2010) (internal citations omitted and emphasis added). None of the experts identified have any legal training or experience, and only one of the experts identified—Ms. Ackland—appears to have any experience with UCC filings. Even then, Ms. Ackland's experience does not include analyzing the legal sufficiency of collateral descriptions in UCC filings. Having these witnesses testify about legal issues, of which they have no expertise, will not assist the jury.

## II. THE PJSCC DEFENDANTS SHOULD NOT BE PERMITTED TO INTRODUCE CUMULATIVE AND DUPLICATIVE EXPERT TESTIMONY

If the PJSCC Defendants are allowed to present testimony regarding the meaning of the term "placed" in the cattle industry, they should be limited to presenting <u>one</u> expert witness on this topic, rather than parading five identical witnesses in front of the jury. Rule 403 of the Federal Rules of Evidence permits the Court to exclude otherwise relevant evidence if its probative value is outweighed "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "It is well within the discretion of a district court to limit the number of expert witnesses who testify at trial." <u>Aetna Casualty & Surety Co. v. Guynes</u>, 713 F.2d 1187, 1193 (5th Cir. 1983); <u>Ruud v. United States</u>, 256 F.2d 460, 463 n.5 (9th Cir. 1958) (court has discretion to limit number of witnesses on an issue); <u>Wetherhill v. University of Chicago</u>, 565 F. Supp. 1553, 1564 n.5 (N.D. Ill. 1983)(court should avoid "prolonged battles of the experts, with each side vying to present a long parade of witnesses to overwhelm the jury"); <u>Green Constr. Co. v. Kansas Power & Light Co.</u>, 1 F.3d 1005, 1014 (10th Cir. 1993) ("It is certainly within the district court's discretion to limit the number of experts, provided the witnesses are not excluded arbitrarily, or on the basis of mere numbers."); <u>United States v. Friesen</u>, 2009 U.S. Dist. LEXIS 23084 at *4 (W.D. Okla. 2009) (cumulative expert testimony may be limited); <u>Iacangelo v. Georgetown Univ.</u>, 560 F. Supp. 2d 53, 57 (D.D.C. 2008) ("This court has discretion to limit the number of expert witnesses when their testimony would be cumulative, a waste of time, or present a danger of unfair prejudice.").

The PJSCC Defendants have identified five separate expert witnesses, all of whom will give the exact same opinion—that "placed" means "placed on feed at a feedlot." Their "expert reports" confirm that they intend to offer identical testimony on this issue. Indeed, a number of the reports appear to be "fill-in-the-blank" forms with near-identical language. In some

7

instances, the reports merely provided blanks where the purported experts could fill-in "yes" or "no" responses to canned questions prepared by the PJSCC Defendants' legal counsel. (See Docket No. 134 at 19-26). The opinions offered by these witnesses are not sufficiently varied that the Court should permit any more than one witness to testify, if the Court concludes that any of them should be permitted to testify at all.

### III. THE REPORTS SUBMITTED BY THE PJSCC DEFENDANTS' EXPERTS DO NOT SATISFY THE BASIC REQUIREMENTS OF FED. R. CIV. P. 26(a)(2)(B).

The "expert reports" submitted by the PJSCC Defendants' experts do not meet the basic requirements of Fed. R. Civ. P. Rule 26(a)(2)(B) and should be stricken. Reese v. Herbert, 527 F.3d 1253, 1266 (11th Cir. 2008) ("Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational"). Rule 26(a)(2)(B) requires a disclosure "prepared and signed by the witness." The Rule further requires expert reports to provide:

1. "a complete statement of all opinions the witness will express and basis or reasons for them;"

2. "the data or other information considered by the witness in forming [the opinions];"

3. "any exhibits that will be used to summarize or support [the opinions];"

4. "the witness's qualifications, including a list of all publications authored in the previous 10 years;"

5. "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and"

8

> 6. "a statement of the compensation to be paid for the study and testimony in the case."

Fed. R. Civ. P. 26(a)(2)(B). All of the expert reports submitted by the PJSCC Defendant's experts fail to satisfy the minimal requirements of Rule 26(a)(2)(B). The most glaring defect in the reports is that they fail to provide any analysis or bases for the opinions. The naked expression of the opinions set forth in the reports, without any rationale to support them, is insufficient under Rule 26(a)(2)(B) because it denies LOLFC the opportunity to test the veracity of those opinions. Indeed, the only evidence that the purported experts point to in support of their opinions is a reference to "USDA reports" that use the term "placements." (Docket No. 134 at 12, 17, 21, 25, and 29). Yet, not one of the purported experts attached any examples of such USDA reports to their reports as required by Rule 26(a)(2)(B). Furthermore, none of the experts explain what import, if any, the USDA's usage of the term "placed" has or should have on the collateral description set forth in a UCC financing statement. Instead, every one of the experts takes the collateral description set forth in LOLFC's financing statement out of context, focusing on the term "placed" to the exclusion of the entire phrase used by LOLFC: "All cattle . . . <u>placed [by Third-Party Defendants] with [4-Square] under a Cattle Consulting Agreement</u>." (Docket No. 10 at 41). The purported experts' failure to follow the obligations under Rule 26(a)(2)(B) is not merely a problem of form—it substantively deprives LOLFC of the opportunity to meaningfully respond to their alleged opinions.

The expert reports also fail to comply with numerous other requirements of Rule 26(a)(2)(B), including:

- failing to identify all data or information relied upon (all experts);

- failing to identify any exhibits that will be used or relied upon at trial (all experts);

- failing to provide a list of all publications authored in the previous 10 years (all experts);

- failing to provide a list of all cases in which expert testimony has been given during the previous four years (Lawton, Peschel, and Ackland); and

- failing to provide a statement regarding compensation (Foote, Timmons, Lawton, and Peschel).

The experts have not even attempted to comply with the majority of the requirements set forth in the Federal Rules of Civil Procedure relating to expert disclosures. Accordingly, they are clearly deficient and the experts should be precluded from testifying at trial.

## CONCLUSION

For all of the foregoing reasons, LOLFC respectfully requests that the PJSCC Defendants' purported experts be excluded from testifying at trial. In the alternative, if the Court allows the proposed expert testimony, the PJSCC Defendants should be limited to one expert to avoid cumulative and duplicative testimony and a waste of time and judicial resources.

Respectfully submitted,

STOEL RIVES LLP

Dated: September 15, 2010

By: s/Jonathan C. Miesen
Jonathan C. Miesen
Minn. Atty. Reg. No. 19752X

Suite 4200
33 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 373-8810
Facsimile: (612) 373-8881
E-mail:   JCMiesen@stoel.com

Attorneys for Plaintiff

70285282.1 0039116-00012