## United States District Court
### District of Nebraska

| | |
|---|---|
| LOL Finance Company,<br>                    Plaintiff, | No  09-cv-3224<br>Judge Kopf |
| v. | |
| Robert P. Johnson<br>and Keri J. Maloley<br>Individually and d/b/a<br>Paul Johnson & Sons Cattle Co., Inc.,<br>John Doe and<br>ABC Company<br>                    Defendants. | Brief in Support of<br>Motions for Summary Judgment of<br>Robert A. Johnson<br>Keri J. Maloley<br>Paul A. Johnson & Sons Cattle Co., Inc. |
| Paul Johnson & Sons Cattle Co., Inc.,<br>                    Third Party Plaintiff, | |
| v. | |
| Maverick Feeders, Inc.,<br>A South Dakota Corporation,<br>Shon Sawyer and Julie Sawyer,<br>Husband and wife,<br>                    Third Party Defendants | |

### Case Overview

1.    LOL Finance, a creditor of Maverick Feeders, Inc., and Shon and Julie Sawyer, asserts Paul A. Johnson & Sons Cattle Co., Inc, ("Johnson Cattle"), its President, Robert P Johnson, and its bookkeeper, Keri J. Maloley (Robert's daughter) are indebted to it.    It contends Mr. Johnson, individually, and Ms. Maloley committed misrepresentation or concealment, and incurred personal liable to LOL.  It contends Johnson Cattle is indebted to it because Johnson Cattle received proceeds of sale when Maverick Feeders and Sawyer cattle were sold.   LOL claims it had a first priority perfected security interest in the cattle and was entitled to the proceeds.  Johnson Cattle contends LOL had no security interest which attached to the cattle and certainly none that traced to Nebraska.

2.      Johnson Cattle and its principals respectfully demonstrate the absent of genuine factual issues concerning them, and the propriety of summary judgment in their favor in the following uncontroverted facts and evidence.

### Statement of Uncontroverted Facts

3.      It is uncontroverted that Johnson Feedlot's UCC lien on the cattle in Nebraska was filed prior to LOL's Nebraska UCC lien (Depo Ex 1, 2,).

4.      It is uncontroverted that LOL's purported lien on the cattle in South Dakota does not give adequate notice.  The description of the collateral in LOL's South Dakota lien is both inaccurate and ambiguous in its terms (Ex 8, 9,10,11,12,13).

5.      It is uncontroverted what the terms 'place', 'placed' and 'placements' mean in the cattle industry.  It is also uncontroverted that LOL's use of the term 'placed' in it's liens in both South Dakota and Nebraska does not comply with common industry definitions and that the language is at best misleading and vague (Ex 8,9,10,11,12,13.

6.      It is undisputed that no cattle could ever be placed with 4-Square for feed or for any other purpose (Ex 6 and 7).

### Evidence Offered in Support of Defendants'/Third Party Plaintiffs' Motion for Summary Judgment

| | |
|---|---|
| 1. | Declaration of McKay |
| 2. | Declaration of Robert P. Johnson |
| 3. | Declaration of Keri J. Maloley |
| 4. | Robert P. Johnson Deposition |
| 5. | Keri J. Maloley Deposition |
| 6. | Shawn Sawyer Deposition |
| 7. | Ronald McKay Deposition |
| 8. | Chris Kalkowski (FNBO) Deposition |
| 9. | Declaration Judith Ackland |

AP1577

2

| 10. | Declaration John Lawton |
| 11. | Declaration Joe Peschel |
| 12. | Declaration of Scott Foote |
| 13. | Declaration of Brian Timmons |
| 14. | Deposition exhibits renumbered in the Evidence Index, but with corresponding numbers as follows:<br>1, 2, 14, 83 |

## Summary Judgment Standard

7.      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."

Brennan v. Qwest Communications Int'l, Inc., CIV. 07-2024 ADM/JSM, 2010 WL 2901002 (D. Minn. July 20, 2010)

## Argument

## Applicable UCC Law

8.      Security interests or liens on personal property collateral may be created, and separately perfected, only in accord with proceedings specifically prescribed by law.  The creation of a security interest occurs when a written agreement is made granting the creditor a security interest, and the creditor gives value of the assets

subjected to the interest.  Collateral must be specifically described for a security interest to be created or for it to be perfected.  *Neb UCC* § 9-108.[1]

9.      Once a security interest is created, it "is effective according to its terms between the parties, against purchasers of the collateral and against creditors."  § 9-201(a).  A writing, sufficiently specific in nature, is not necessarily required for a security interest to be enforceable.  *Matter of Traudt*, 161 BR 242.  A security interest attaches when it become enforceable against the debtor.  This occurs when value has been given, the debtor has rights in the collateral, or the debtor has authenticated a security agreement describing the collateral, collateral is in the possession of the secured party and not certificated, or the collateral is certificated and has been delivered to the secured party. In effect, the security agreement must exist, value must be given, and the debtor must acquire rights in the collateral at which point the security agreement attaches.

10.      In cases involving multi-state transactions, "the local law of [the] jurisdiction [of the debtor's location, or the collateral's location] governs perfection." *Neb UCC* § 9-301.  Specifically, the UCC makes this provision in § 9-302 for farm products, including cattle:

> While farm products are located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of an agricultural lien on the farm products.

11.      In other words, cattle are not covered by certificates of title.  Brands are not certificates of title.  In order to perfect a security interest it is necessary that filings be made with the Nebraska Secretary of State. In 2008 the Nebraska Attorney General issued an opinion stating that the Nebraska Secretary of State has authority to treat financing statements filed to perfect specific statutory liens as financing statements for

---

[1] *Neb UCC § 9-108(c)* states that: "A description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral."

agricultural liens under the UCC.[2] The first to file and perfect a lien prevails over other creditors who perfect their liens later, or with all unperfected liens.[3]

### Johnson Cattle's Lien is Superior to LOL's Liens

12.     Johnson Cattle held a superior lien over that asserted by LOL with respect to the cattle that are the subject of this lawsuit.  Each party had lien statements on file with the Nebraska Secretary of State's office.  Johnson Cattle's lien was filed on 2/22/06 (Depo Ex 1) and on 6/30/06 (Depo Ex 2).  By contrast, LOL's lien in Nebraska was not filed until 6/3/09 (Ex 1), which was not only long after Johnson Cattle's lien was filed, but several months after the cattle LOL claims an interest in began to arrive at Johnson Cattle.  The undisputed evidence shows that in Nebraska LOL's lien was filed after Johnson Cattle's lien and is therefore second in time and subordinate in importance. There is no question Johnson cattle has the superior lien in Nebraska.

13.     LOL relies on a lien that it filed with the office of the South Dakota Secretary of State on 2/28/02 (Dep. Ex 83).  The legal description of the collateral in that lien filing states:

> All of the cattle whether now owned or hereafter acquired by Debtorr (sic) and placed by Debtor WIth 4-Square Cattle Management Services under a Cattle Consulting Agreement executed between Debtor and 4-Square Cattle Management Services, all additions thereto whether such additions are by reproduction, purchase, acquisition, inheritance, gift or otherwise; all feed and graIn Inventories now owned or hereafter acquired used for feeding of such cattle; all commodity futures contracts hedging accounts, other documents of title, accounts, contract rIghts, now owned or hereafter acquired by Grantor pertaining to such cattle; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (Including Insurance)  general intangibles and other accounts

---

[2] Op. Att'y Gen. No. 08-006. (September 26, 2008).

[3] Neb UCC §9-308 reads: a) Except as otherwise provided in this section and section 9-309, a security interest is perfected if it has attached and all of the applicable requirements for perfection in sections 9-310 through 9-316 have been satisfied. A security interest is perfected when it attaches if the applicable requirements are satisfied before the security interest attaches. (b) An agricultural lien is perfected if it has become effective and all of the applicable requirements for perfection in section 9-310 have been satisfied. An agricultural lien is perfected when it becomes effective if the applicable requirements are satisfied before the agricultural lien becomes effective.(c) A security interest or agricultural lien is perfected continuously if it is originally perfected by one method under this article and is later perfected by another method under this article, without an intermediate period when it was unperfected.(d) Perfection of a security interest in collateral also perfects a security interest in a supporting obligation for the collateral.(e) Perfection of a security interest in a right to payment or performance also perfects a security interest in a security interest, mortgage, or other lien on personal or real property securing the right.(f) Perfection of a security interest in a securities account also perfects a security interest in the security entitlements carried in the securities account.(g) Perfection of a security interest in a commodity account also perfects a security interest in the commodity contracts carried in the commodity account.

proceeds), any & all equities or patronage credit: whether any of the foregoing is owned
now or acquired later: all accessions, additions., replacements. and substitutions relating
to any of the foregoing; all records of any kind relating to any of the foregoing

14.    The description contained in the South Dakota lien filing is inadequate to put reasonable people on notice of any interest claimed by LOL.  In her declaration (Ex.9) Judith A. Ackland states that the terms "place", "placement", "placements" or "placed" have special meanings in the cattle business have a special meaning to cattle owners, feed yard operators and bankers engaged in the cattle business. Ms. Ackland states:

> In the cattle industry, the terms "place" or "placed" refer to the owner of cattle, or his agent, contacting a feedyard operation and transporting his cattle or causing his cattle to be transported to the feedyard operation for feeding and care until the cattle are ready to be shipped to another location such as to a packer for slaughter.  Thus, if a document refers to cattle being "placed" with a certain entity, cattle owners, feedyard operations, and bankers would expect that the entity was a feedyard where the cattle were being fed and cared for.

> The terms "placement" and "placements" in the cattle industry refer to numbers of cattle having been "placed" at feedyards during a certain period of time.  Thus, a report issued that states there were a certain number of placements during the month of July, that number would refer to the number of new cattle placed in the feedyards during July.

15.    This opinion was echoed by Mr. Kalkowski during his deposition (Ex 8).  Mr. Kalkowski testified that placement of cattle on feed means that they are placed at a location to be fed (Ex 8 292:4-8).  Mr. Kalkowski testified that he found no valid lien executed by LOL on the cattle that are the subject of this lawsuit (Ex 8 295:8-25; 296:1-2).  Mr. Kalkowski testified that Deposition Exhibit 83 which was the UCC statement filed by LOL has an inadequate description. (Ex 8 299:3-25).

16.    Dr. John R Lawton, DVM echoed this description of the term "placed" with respect to cattle in his questions and answers (Ex 10).  Joe Peschel states in his questionnaire (Ex 11) that the term "placed" means that the cattle are physically delivered in the feed yard to be fed.  Scott Foote's affidavit (Ex 12) states in paragraph 10 that the terms "placement", "place", and "placed" are…."technical terms describing the transfer and location, or movement, of cattle from a location where they are prepared, or

6

backgrounded, to be placed in feed yards and given a feeding ration…".  Mr. Brian Timmons affidavit (Ex 13) echoes these definitions.

17.     Ron McKay, an employee of LOL agreed in his deposition that the term "placements" of cattle means that the cattle are put into a feed yard.  Mr. McKay indicated that "placed" can mean any one of a number of things in the cattle industry. (Ex7 8:1-9).   During his testimony Mr. McKay quipped that Webster's Dictionary contains the definition for the term "placed" (Ex7 23:18-25).  Mr. McKay admitted that the lien attached to his declaration (Ex 1) was the first time that LOL had filed a lien in Nebraska in this matter (Ex7 13-16).  Mr. McKay also admitted that LOL's UCC filing in Nebraska occurred after the cattle in question had been moved to Johnson Feed yard (Ex7 81:11-17).

18.     Mr. McKay testified that the 4-Square Cattle offices are in a Purina feed mill complex in Lubbock Texas, and that 4-Square has no livestock facilities and no pens for cattle. (Ex7 6:16-22).  Mr. McKay opined that 4-Square provides management services and consulting services (Ex7 18:17-23; Ex 1).  This statement is contradicted by Mr. McKay's letter to Mr. Johnson (Depo Ex 14) in which Mr. McKay asserts 4-Square is simply monitoring the cattle.

19.     Shon Sawyer, the owner of Maverick, and one of the Third Party Defendants in this matter, testified to the following during his deposition: "I don't think you place cattle with 4 Square (sic).  4 Square (sic) is a management service for cattle that are put in different locations." (Ex 6 15:17-19).  Even Mr. Sawyer, another adverse party in this case, admits that the cattle were never placed with 4-Square. Mr. Sawyer testified that he is in the business of feeding cattle (Ex 6; 5:11-14).   There is no question that the cattle were never placed with 4-Square.  There is no question that LOL's lien description is inaccurate and misleading.

20.     The evidence shows that the language contained in the South Dakota lien filed by LOL is at best ambiguous and at worst meaningless in terms of supplying notice.  Expert witnesses have filed affidavits and declarations that state clearly what the

term "placed" means in the cattle industry.  In order to be sufficient a description of property on a lien must reasonably identify what is described. *Graphic Resources, Inc. v. Thiebauth*, 233 Neb. 592, 447 NW2d 28 (1989).  The evidence is undisputed that the lien filed by LOL in South Dakota is inadequate to this task.  No cattle were ever place with 4-Square within the common industry usage of that term.  Even the testimony of Mr. McKay, one of LOL's own employees shows that the term 'placed' is at best ambiguous. In short, not only does the evidence show that that the lien was unclear and incorrect, but that it was physically impossible for any cattle to ever be 'placed' with 4-Square since 4-Square is not a feedlot and has not facilities for holding or taking care of cattle.

21.    There is no genuine issue of material fact on the issue of lien superiority.  Johnson Feed yard has first lien in Nebraska, and the lien filed by LOL in South Dakota contains language which is vague and ambiguous and even leads one to a false conclusion. In terms of cattle industry understanding LOL's lien in South Dakota states that the cattle were literally at 4-Square Cattle.  That was shown to be impossible through Mr. McKay's testimony.

## Conclusion

22.    There is no issue of material fact that Johnson Feedlot's lien is superior in both time and description in Nebraska.  LOL's lien filed in South Dakota is actually in error in its description since it implies that the cattle were literally placed at 4-Square, which is impossible given 4-Square's lack of facilities.  At best, LOL's lien filing in South Dakota was vague and ambiguous in its description of the collateral.  This Court should find for the Defendants/Third Party Plaintiffs in this matter and dismiss LOL's claims against them with prejudice.

September 24, 2010.

Robert P. Johnson & Keri J Maloley
Individually and d/b/a Paul Johnson
& Sons Cattle Co., Inc., Defendants


By      /s/ David A. Domina
        David A. Domina # 11043
        DOMINALAW Group pc llo
        2425 S 144th St.
        Omaha NE 68144 2367
        402 493 4100
        ddomina@dominalaw.com

### Certificate of Service

On September 24, 2010, I filed **Brief in Support of Motions for Summary Judgment of Robert A. Johnson Keri J. Maloley Paul A. Johnson & Sons Cattle Co., Inc.** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all Counsel of Record.


Jonathan Miesen                     Shawn Nichols
Stoel Rives, LLP                    Cadwell, Sanford, Deibert & Gray, LLP
jcmiesen@stoel.com                  snichols@cadlaw.com

Steven Sanford                      Thomas O. Kelley
Cadwell Sanford Deibert & Gray LLP  McGrath North Mullin & Kratz, PC LLO
SSanford@cadlaw.com                 tokelley@mcgrathnorth.com

William F. Hargens
McGrath North Mullin & Kratz, PC LLO
whargens@mcgrathnorth.com


                                    /s/ David A. Domina