UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| LOL FINANCE COMPANY, | Case No. 09-CV-3224 |
| Plaintiff, | |
| v. | BRIEF IN JOINT-RESISTANCE TO DEFENDANTS' MOTIONS IN LIMINE (DKT##'s 143 and 150) |
| PAUL JOHNSON & SONS CATTLE CO., INC., FIRST NATIONAL BANK OF OMAHA, ROBERT P. JOHNSON AND KERI J. MALOLEY, JOHN DOE AND ABC COMPANY, | |
| Defendants. | |

PAUL JOHNSON & SONS CATTLE CO., INC.,

       Third-Party Plaintiff,

v.

MAVERICK FEEDERS, INC., SHON SAWYER AND JULIE SAWYER,

       Third-Party Defendants.

## INTRODUCTION

Defendants have moved to exclude the expert testimony of three experts identified by Third Party Defendants ("Maverick").[1] The motion stems from several key problems, including: (1) a fundamental misunderstanding of FRCP 26(a)(2)(B) and its application

---

[1] The Feed Yard defendants adopted FNBO's arguments by reference without raising additional bases for their motion. For purposes of streamlining the record, this brief is offered in resistance to both motions.

1

to <u>party</u> <u>witnesses</u>, and (2) factual guesswork as a result of a failure to conduct <u>any</u> <u>discovery</u> related to Maverick's damage claims, and (3) an improper attempt to jettison the role of the jury regarding the weight of the evidence. For these primary reasons and as explained more fully below, the Defendant's *Daubert* motion should be denied.

## ARGUMENT AND AUTHORITY

**1. Shon Sawyer was not "specially retained" to provide expert testimony and is therefore exempt from the requirements of FRCP 26(a)(2)(B).**

The ground rules at issue with the Defendant's motion (DKT ## 143 and 146) are set forth in FRCP 26(a)(2)(B). This particular rule limits the disclosure requirements to witnesses who are "<u>retained or specially employed</u> to provide expert testimony in the case or one whose duties as the party's employee regularly involved giving expert testimony." *See id.* (emphasis supplied). In this particular case, Shon Sawyer was neither specially retained to provide expert testimony, nor does he regularly provide expert testimony for Maverick. So the disclosure rules do not apply to this particular witness. Because the expert disclosure requirements do not apply to Sawyer the Defendants' arguments regarding Sawyer's ability to testify about the damage to him and his company ring hollow.

**2. Sawyer is permitted by law to testify about his damages.**

The central purpose of the Defendants' limine motions is to gut Maverick of its ability to present any evidence regarding its damages. This is so even though neither party bothered to serve discovery regarding Maverick's damages. *See* Nichols' Limine

Affidavit at ¶ 2 and Exhibit 1. [2] The Feed Yard defendants asserted one interrogatory regarding what duties Maverick alleges were breached. *See id.* (interrogatory 17). Other than that, Maverick's affirmative claims went untouched during written discovery. Despite disclosing Maverick's claim to lost profit damages prior to Sawyer's deposition, the only questions related directly those damages are on pages 143 and 144 of the deposition transcript (none of which were geared toward the methodology in completing the calculation). *See id.* at Exhibits 2 and 8.

To make up for lost time, the Defendants now assert that Maverick's damages are too speculative and therefore argue that no testimony should be presented on this topic. The argument ignores both the facts and the law.

It is well settled that "a business owner's testimony is sufficient to support an award of lost profits." *See Diesel Machinery, Inc. v. B. R. Lee Industries, Inc.,* 418 F3d 820, 837 (DSD 2005); *Pullman v. Land O'Lakes, Inc.,* 262 F3d 759, 765 (8th Cir. 2001); *Reeder-Simco GMC, Inc., v. Volvo GM*, 374 F3d 701, 714-715 (8th Cir. 2004); *Beserco, Inc. v. Metrix Co.,* 324 F3d 955, 963 (8th Cir. 2003). Provided Sawyer is able to lay sufficient foundation at trial regarding his ownership of Maverick Feeders, and his cattle experience, he should be permitted to testify about his damages. *See generally id*. To suggest that the testimony should be excluded simply because Maverick chose to disclose its principal as an expert, is a notion that should be rejected. The Defendants' motions

---

[2] Third Party Defendants did serve an expert disclosure indentifying Shon Sawyer. Although the disclosure was not required under the Rules, we served such a disclosure in the abundance of caution, and to alert opposing counsel as to Sawyer's expected area of testimony given the lack of any interest in conducting discovery in regard to our side of the case. Had we not disclosed that Sawyer would be testifying as to his damages the Defendants most assuredly would object due to lack of notice. But they should not be allowed to have it both ways.

3

are really credibility determinations (disguised as motions), that should be reserved for the jury. *See Brown v. Sandals Resorts Int'l,* 284 F3d 959, 954 (8th Cir. 2002) (noting that credibility determinations regarding the weight of evidence are reserved for the jury).

The Federal Rules of Evidence also permit Sawyer's testimony about his damages. FRE 701 allows a lay witness to provide testimony in the form of opinions that are (a) rationally based on the perception of the witness, (b) helpful to clear understanding of the witnesses' testimony or the determination of a fact and issue, and (c) not based on scientific, technical or other specialized knowledge from in the scope of Rule 702." *See* FRE 701. In this case who better to describe the damage to his business as a result of the Defendants' conduct than Shon Sawyer, Maverick's owner and president? The motions should be denied for this additional reason.

### 3. Maverick complied with its obligations under FRCP 26(a)(iii).

In reality, Maverick's only obligation in this case is to describe its damages in a disclosure statement, which Maverick did. As the Third-Party Defendants' disclosures indicate, Sawyer has bought, fed and sold more than 100,000 cattle over the last 17 years. *See* FNBO's Index (DKT # 144) at Exhibit 1. In the last several years, Mavericks' business has annually owned between 7,000 and 11,000 head of cattle. *Id.* Some of these cattle were custom fed at the Maverick feedlot in Hurley, South Dakota. *Id.* Some were fed on contract with feedlots such as Paul Johnson and Sons.

Because of the conduct of the Defendants, Maverick and Sawyer's capacity to run its customary business has taken a massive hit. Currently Maverick owns less than 500 cattle, as its 2010 business operation is about 95% less than historical levels over the last

decade. *See generally* Nichols Limine Affidavit at Exhibits 2 and 7. As part of its supplemental initial disclosures, Maverick informed opposing counsel that financial statements and tax returns had been assembled dating back several years, to support the damage claimed. *Id.* at Exhibit 2. Our supplement initial disclosures expressly state as much. *Id.* These records are voluminous. Given the size and volume of the documents, we offered opposing counsel the opportunity to inspect and copy any such documents. *Id.* That is all FRCP 26(a)(iii) requires.

Rather than accept our invitation to review and copy Maverick and Sawyers completed tax returns and financial statements, the Defendants instead moved to exclude Sawyer's the testimony as speculative.[3] Maverick has complied with its obligation under the Rules and the Defendants cannot now claim Maverick's evidence is speculative when they have failed to even review the documents upon which Maverick relies in supporting its historical performance.

**4. The record shows that Maverick sustained lost profits.**

FRCP 26(a) considerations aside, the Defendants also claim that Maverick's damages are "sketchy" and unsupported by the record. This is simply not true.

From 2007-2009, Maverick typically delivered over 3,000 head annually to the Feed Yard to be custom feed. This was just a portion of Maverick's business conducted during 2007-2008.

---

[3] The records have been at counsel's office since August 27. Shon Sawyer was deposed at counsel's office on August 30. Counsel for all parties were present.

Sawyer was questioned during his deposition about his January 2009 accountant prepared balance sheet reflecting ownership of $7.5 million dollars in cattle. *See* Nichols Limine Affidavit at Exhibit 7. Maverick delivered 3,431 head of cattle in 2009 to the Feed Yard, representing a portion of its cattle operation. Even adding back in the Feed Yard's phony feed adjustment charges, there was nearly $1.8 million in proceeds beyond feed costs in those cattle. Without the proceeds, Maverick's line of credit with LOL (which was used in 2008 to purchase over 3,500 of cattle) was declared in default. *Id* at Exhibit 6. Plaintiff's director of lending Tim Wilkens testified that LOL would not have declared Maverick in default had the proceeds been paid by the Feed Yard as they should have been. *Id*.

Calculating lost net profits on cattle is not rocket science. There are basically three factors that apply: (1) the cost to purchase feeder cattle; (2) the cost to feed the cattle; and (3) the sale price of the cattle once fattened. The Feed Yard typically prepares profitability estimates for its customers based on the purchase price of cattle, the cost of feed and expected sale prices. *Id* at 3. The Feed Yard's principal, Robert Johnson, will also be able to confirm cattle prices and feed costs over the last year based on his regular dealings with 15,000 head annually. The USDA maintains records showing average sale prices for cattle during specific quarters. *Id.* at 5. This Court is able to take judicial notice of USDA records. *See Stutzka v. McCarville,* 420 F3d 757 (8th Cir. 2005) (noting that the Court may take judicial notice of judicial opinions in public records); *Brocato v. Department of Corrections,* 2009 WL 3489367 (C.D. Cal. 2009) (opinion reflects that the trial court took judicial notice *sua sponte* of USDA statistics for the male diet citing to

the USDA website ); *B.T. Produce Co., Inc. v. Robert A. Johnson Sales, Inc.,* 354 FSup 2D 284 (S.D. N.Y. 2004) (Court took judicial notice of USDA report noting that courts typically take judicial notice of official government records and reports as being capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned ); *in re Anderson,* 88BR 877 (Bkt. ND. Ind. 1988) (Court took judicial notice of Indiana agricultural statistics of 1986, issued in conjunction by the USDA and Purdue University).

Suffice it to say, there is well-accepted information in the record, or which can be judicially noticed under FRE 201, to support and quantify the three factors that go into determining net lost profits on the sale of cattle. It is not speculative to conclude that Maverick sustained damage over the last year by the loss of the ability to finance the purchase of feeder cattle. Maverick's damage continues and will continue through trial. The law requires only a sound basis for the damages and not exact certainly. *Lis v. Moser Well Drilling & Service, Inc.,* 377 NW2d 98, 100 (Neb. 1985) (proof to a mathematical certainty, however, is not required; the proof is sufficient if the evidence is such as to allow the tryer of fact to estimate the actual damages with a reasonably degree of certainty and exactness). If the opposite were true there would be no point in presenting competing evidence for trial.

Given the above, Shon Sawyer should be permitted to testify as to his damages at trial. The Defendants backdoor effort to prevent <u>any damage testimony</u> under the guise of a Daubert motion, should be rejected.

### 5. Maverick's disclosures sufficiently satisfy the Rule.

Turning to Defendants claims as to Knobbe and Fausti, the main argument seems to be that the reports are too vague. Neither witness has ever testified before. The Defendants do not explain in what respect the disclosures are vague, even though the disclosures themselves make clear that both witnesses are <u>only</u> intended to provide general information about the cattle industry. Indeed, Defendants fail to appreciate that neither witness has been disclosed to provide opinion testimony specific to Maverick's claims, rather to provide testimony about publicly available information about cattle markets from a trained eye, independent of any party bias.[4] So the letter reports from Knobbe and Fausti are general in nature, as their expected testimony will be of a general nature.

The Defendants nevertheless argue that the disclosures are inadequate due to failure to attach any documents showing cattle prices. Maverick has traditionally purchased feeder cattle (such as the Tri-County cattle at issue in this case) in the fall and winter. USDA data showing regional average cattle prices for feeder cattle this past fall and winter, was produced 17 days after Maverick's supplemental expert disclosures. *See* Nichols Limine Affidavit at 5. This one page document is of public record and contains uncontroversial data. Sawyer would be permitted to testify about this data even if it was produced 30 days prior to trial. *See* FRCP 26(a)(3). It would therefore seem odd to deny Knobbe or Fausti from testifying because this sheet was not attached to their disclosures.

---

[4] In documents produced in discovery from Scott Fausti there is some confusion with this expert as to whether he was being retained to provide damage testimony or calculations. Maverick does not intend to call Fausti to testify beyond the subjects outlined the August 30th disclosure.

It would seem odd to exclude testimony about USDA records that have yet to be created when Maverick's damages are continuing. Either way, a harmless violation of the discovery rules requiring disclosure of certain evidence does not mandate exclusion of the evidence. *Smith v. Tenet Healthsystem SL, Inc*. 436 F.3d 879 (8th Cir. 2006).

In addition, USDA data showing recent sale prices for fat cattle are continuously being generated, and data for the normal marketing period of fat cattle have not yet been generated.[5] FRCP 26(a)(3) embraces case dynamics by permitting a party to supplement information prior to trial. Maverick's disclosures for Fausti and Knobbe specifically reference the fact that we are waiting on public data to discuss recent market activity. Rather than follow up, or seek to depose either witness, the Defendants seek to instead block the testimony. However, "[FRE] 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001) (quoting *Weisgram v. Marley Co.,* 169 F.3d 514, 523 (8th Cir.1999). "The rule clearly is one of admissibility rather than exclusion." *Id.* (quoting *Arcoren v. United States,* 929 F.2d 1235, 1239 (8th Cir.1991)). The Defendants have failed to explain why Knobbe and Fausti should be prevented from testifying and the motion should be denied.

### 6. Harry Knobbe should be permitted to rebut the Feed Yard's experts.

The Feed Yard claims that an inordinate number of Maverick cattle died while being fed. The Feed Yard did not keep rendering receipts for the dead cattle. The Feed Yard also has not produced the bi-weekly feed bills for the several lots of cattle delivered

---

[5] Note that Maverick's Tri-County cattle were all sold between September and November of 2009.

by Maverick in 2009—it just supplied a sum total of several months after the fact. *See* Nichols Aff (DKT # 172) at Exhibits 2-3. So Maverick lacks access to critical documents regarding management of cattle and the underlying data supporting the Feed Yard's claim of setoff for so-called "old debt", the amount of which continues to be a moving target. *Id*. The missing documents regarding management and old debt have direct ramifications on liability and damages.

The Feed Yard filed expert disclosures on August 20th (Dkt #134) identifying Joe Peschel and John Lawton as having expertise in feed yard management, including receipt and recordkeeping issues and elimination of sick cattle. *See id*. The disclosure does not offer specific opinions on these issues. We have similarly identified Harry Knobbe as an expert regarding what feed lot records should be maintained. The issue appears to come down to a simple question of whether or not a feed yard should keep old feed bills for shipped cattle and whether it should keep rendering receipts for dead cattle. The testimony is not any more complicated than that. To the extent Maverick's expert disclosure for Harry Knobbe is insufficient, any incompleteness is "substantially justified" by the lack of any specific opinions contained in the disclosures related to Peschel and Lawton. *See* FRCP 37(c).[6]

---

[6] As the Court is aware, Maverick obtained virtually no discovery from either Defendant until August of this year. During two separate telephone conferences with the Court we have maintained a desire to keep our January trial date at all costs, particularly given the severe business interruption to Sawyer and Maverick. For this reason we have avoided requesting additional time to complete dates, even though that has resulted in corresponding difficulties.

### 7. Fausti and Knobbe should alternatively be allowed to testify under the umbrella of FRE 701.

Harry Knobbe and Scott Fausti are primarily foundational witnesses which will be called to testify about known industry factors that go in to buying and selling cattle. They will be offering no opinions specific to this case, simply testifying about publicly available information provided by the USDA which they can cull through and assist the jury in processing through their academic and real world experiences. This is precisely the kind of testimony that is allowed under FRE 701.

FRCP 26(a)(2)(B) disclosures are required only for expert testimony that falls under FRE 702, 703 or 705. The rule specifically provides as much. By contrast, under FRE 701 a witness may provide lay opinion testimony "about facts within his or her range of generalized knowledge, experience, and perception." *United States v. Espino,* 317 F.3d 788, 797 (8th Cir.2003). "[P]erceptions based on industry experience, is a sufficient foundation for lay opinion testimony." *Burlington N. R.Co. v. Nebraska,* 802 F.2d 994, 1004-05 (8th Cir.1986).

Fausti is a professor at the South Dakota State University. *See* Nichols Limine Affidavit at Exhibit 4. He teaches classes in agricultural economics. *Id.* He is being called as a witness to generally explain the economic forces involved in buying and selling cattle. *Id* at 4-5. Fausti provides an academic perspective on cattle inputs. *Id.* The other identified witnesses do not have this background. Fausti's academic background will thus be helpful to the jury in understanding the issues related to the

11

cattle feeding issues in controversy, as well as deductions that must be considered to get from Maverick's gross lost profits, to net lost profits.

In addition to feeding cattle, Harry Knobbe operates a commodity house in West Point, Nebraska. *Id*. at Exhibit 4. Through his professional experiences Knobbe has a front row seat to cattle market trends over the last several years. Knobbe's experience and background in cattle feeding and commodity prices will help explain how 2010 was a good year for cattle feeders in an industry that is highly volatile from year to year. This again is the kind of lay testimony that would be helpful for the jury to understand Maverick's damage claim.

Neither Fausti nor Knobbe will be called to testify as to Maverick's damages or to offer any opinions that involve technical or scientific data that falls under FRE 702. For this additional reason, even if the disclosures related to Knobbe and Fausti are deemed to be insufficient under FRCP 26(a)(2)(B), neither witness should be excluded from testifying under FRE 701.

**8. Maverick has acted in good faith.**

The Defendant's motions present a simple question: How far must a plaintiff bend over backward and explain its damages to parties who fail to conduct discovery on the same? Here we believe that we more than complied in setting forth our damage calculations. In the interim, neither of the Defendants failed to follow up with written discovery. Likewise, the Defendants point to no testimony from Shon Sawyer indicating that his damage calculation is speculative. This is because they <u>have no testimony</u> to offer despite having taken Shon's deposition and having passed on the opportunity to

examine the historical background that supports Third-Party Defendants' net loss profits. Under the circumstances the Defendants are in no position to now complain.

## CONCLUSION

For all the reasons contained herein, Third Party Defendants respectfully request that the Defendant's Motions in Limine be denied in all respects.

Dated this __4th_ day of October, 2010.

                                        Cadwell Sanford Deibert & Garry, LLP

                                        /s/ Shawn
                                        Shawn M. Nichols
                                        200 East 10th Street, Suite 200
                                        PO Box 2498
                                        Sioux Falls, SD 57104-2498
                                        (605) 336-0828
                                        Attorney for Third-Party Defendants