## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LOL FINANCE COMPANY, | ) | CASE NO. 4:09-CV-3224 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FIRST NATIONAL BANK OF |
| | ) | OMAHA'S REPLY BRIEF IN SUPPORT |
| PAUL JOHNSON & SONS CATTLE CO., | ) | OF MOTION FOR SUMMARY |
| INC., FIRST NATIONAL BANK OF | ) | JUDGMENT ON CLAIMS ASSERTED |
| OMAHA, ROBERT P. JOHNSON and | ) | BY PLAINTIFF LOL FINANCE CO. |
| KERI J. MALONEY, JOHN DOE and | ) | |
| ABC COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| PAUL JOHNSON & SONS CATTLE CO., | ) | |
| INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MAVERICK FEEDERS, INC., SHON | ) | |
| SAWYER and JULIE SAWYER, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## INTRODUCTION

Plaintiff LOL Finance Company ("LOL") does not dispute that under Nebraska's

Uniform Commercial Code ("UCC") Defendant First National Bank of Omaha ("FNBO") has a

perfected prior security interest in funds deposited in any deposit account maintained by

Defendant Paul Johnson & Sons Cattle Co., Inc. ("PJSCC") at FNBO. Instead, LOL argues that:

1) the "central account" maintained by PJSCC was not a "deposit account"; 2) FNBO did not

exercise a right of "set off" with respect to the account; and 3) FNBO does not take the funds free of LOL's alleged security interest because FNBO allegedly acted in "collusion" with PJSCC. Notably, these arguments are relegated to a relatively minor role in LOL's opposition brief, the majority of which is devoted to trying to convince the Court that it should not even consider the relevant UCC provisions because FNBO failed to specifically refer to them in its affirmative defenses. Finally, LOL makes a desperate attempt to avoid dismissal of its claims against FNBO by arguing that it should be allowed to assert a frivolous fraud claim against FNBO. For the reasons set forth below and in its opening brief, FNBO respectfully submits that all of LOL's arguments should be rejected and summary judgment should be entered in favor of FNBO on all claims asserted by LOL against FNBO.

## ARGUMENT

I. **THE ARGUMENTS RAISED BY FNBO IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT NEGATE THE ELEMENTS OF LOL'S CLAIMS AND DO NOT NEED TO BE ALLEGED AS AFFIRMATIVE DEFENSES.**

LOL argues strenuously that FNBO should not be allowed to assert that it has a prior security interest in the proceeds of the cattle in question once they were deposited in PJSCC's account at FNBO because, according to LOL, this defense is an affirmative defense that should have been specifically pled as such in FNBO's answer to the amended complaint. As pointed out in FNBO's Opening Brief, however, the defense being asserted negates an element of LOL's claim for conversion. *See City Bank v. Compass Bank*, No. EP-09-CV96-KC, 2010 WL 1959808 at *12 (W.D. Tex. May 12, 2010). The *City Bank* case dealt with facts closely similar to those in this case and found that Texas's adopted version of the UCC which is in essence identical to that of Nebraska "explicitly protects deposit taking banks . . . against various common law claims that might otherwise arise as a result of ordinary banking operations. *This negates the second*

2

*element of conversion by making certain bank actions*, which exercise dominion and control over property, *not 'unlawful.'"* *Id*. (Emphasis added.)

LOL failed to even address the *City Bank* case in its Opposition Brief. Likewise, LOL also failed to address the other factually similar case relied upon by FNBO in its Opening Brief of *Kentucky Highlands Investment Corp. v. Bank of Corbin, Inc.*, 217 S.W.3d 851 (Ky. App. 2006). The *Kentucky Highlands* case specifically held that "[a] depository bank may properly exercise its right of setoff against a secured party who seeks to assert an interest in a commercial deposit account – regardless of whether the secured party claims a security interest in the deposit account as original collateral or its proceeds." *Id*. at 856. Kentucky, like Texas and Nebraska, has adopted the revised Article 9 of the Uniform Commercial Code which has determined that "the interests of depository banks, the free flow of commerce and the checking system are superior to the interest of secured creditors in funds deposited into accounts at depository banks." *Id*. at 855.

Relying upon UCC §§ 9-327 and 9-340, the *Kentucky Highlands* and *City Bank* courts ruled in favor of summary judgment motions filed by depository banks claiming priority over secured creditors asserting conversion claims against them. As is the case with LOL, the secured parties in those cases claimed a priority right to proceeds which had been deposited at the deposit-taking banks. The courts in *Kentucky Highlands* and *City Bank* found as a matter of law that no conversion occurred because the revised Article 9 makes clear that deposit-taking banks have superior rights to funds deposited into accounts at their bank in which they have a security interest.

Thus, the fact that FNBO did not reference Neb. UCC §§ 9-327, 9-332, 9-340 & 9-341 within its affirmative defenses is of no consequence since these provisions in essence negate LOL's allegations that FNBO's actions with respect to the proceeds deposited in deposit

accounts at its bank were wrongful or unauthorized. In this regard, LOL misses the essence of FNBO's arguments. By invoking these statutory provisions of Nebraska's Uniform Commercial Code which grant priority to transferees and deposit-taking banks in funds deposited in deposit accounts, FNBO is not asserting the type of affirmative defense contemplated by Fed. R. Civ. P. 8(c)(1). *See, e.g., First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007) ("when the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense and need not be pleaded despite rule 8(c).") (quoting *Masuen v. E.L. Lien & Sons, Inc.*, 714 F.2d 55, 57 (8th Cir.1983)). Rather, FNBO contends that, as a matter of law, its rights in the funds deposited into and transferred from PJSCC's account at the bank are superior by statute to the claim asserted by LOL. In this regard, there simply cannot be any credible dispute as the statutes, cases, and secondary authorities are clear on the superior rights of depository banks in priority disputes among creditors. *See* Clark and Clark, 2 *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 3.11[1] at 3-85 (Rev. ed. Apr. 2010) ("UCC 9-340(a) gives a depository bank's common-law right of setoff priority over a security interest held by another secured party, including one who claims the deposit account as cash proceeds of an asset-based loan."). [1]

## II.   UNDISPUTED EVIDENCE IN THE RECORD DEMONSTRATES THAT PJSCC'S THREE ACCOUNTS WITH FNBO ARE DEPOSIT ACCOUNTS.

In a futile attempt to create a factual dispute where none exists, LOL argues that PJSCC's "Central Account" was not a deposit account. LOL's argument is completely undermined by the

---

[1] Even if FNBO were required to specifically plead that it had priority in the proceeds from the sale of the cattle in question, FNBO sufficiently did so in Paragraph 60 of its Answer, which alleges that FNBO holds "a valid and perfected security interest in cattle and proceeds which is prior and superior to that of LOLFC." (Filing No. 37 ¶ 60.) LOL incorrectly argues that the deposition testimony of FNBO's loan officer Chris Kalkowski somehow limits the priority defense asserted by FNBO in Paragraph 60. Mr. Kalkowski is not an attorney and cannot be expected to know the intricacies of the UCC as applied to deposit accounts. Moreover, Mr. Kalkowski was not deposed as a corporate representative of FNBO and, therefore, his testimony regarding his understanding of the scope of FNBO's defenses should not limit the scope of FNBO's defenses.

unrebutted facts in the record.

Neb. UCC § 9-102(29) defines deposit account as follows:

> "Deposit account" means a demand, time, savings, passbook, or similar account maintained with a bank. The term does not include investment property or accounts evidenced by an instrument.

PJSCC's "Central Account" (Account No. XXXXX7549)[2] is unquestionably a deposit account. This was confirmed by the testimony of FNBO Vice President Chris Kalkowski who testified that the central account was in fact a deposit account into which PJSCC could deposit funds. (FNBO Supplemental Evidence Index (Filing No. 191-8), Exhibit 14 at 216:10-18; 216:21-23.) Mr. Kalkowski's testimony is supported by the documentary evidence which also demonstrates that the central account is a deposit account. In fact, the statements for this account indicate that it is in fact a "Deposit Account." (FNBO Evidence Index, Exhibit 1, Exhibit J.) Likewise, the statements demonstrate that there were "deposits" and "withdrawals" from this account. The terms that govern this account are FNBO's standard Commercial Deposit Agreement which indisputably vests PJSCC with the authority to deposit and transfer money from the account. (FNBO Evidence Index, Exhibit 1, Exhibit E.) Consequently, there can be no genuine disputed issue of fact that Account No. XXXXX7549 was in fact a deposit account as defined by the UCC since it was clearly a "demand . . . or similar account maintained with a bank." Neb. UCC § 9-102(29) (2010); s*ee also* 8 Hawkland *UCC Series* § 9-105:6 (Oct. 2010) (a deposit account is defined "to mean a demand, time, savings, passbook or like account maintained with a financial institution . . . [t]he term, deposit account, is unlikely to cause any significant difficulty in understanding or application"). And because this account was a deposit account, FNBO clearly has priority to the funds versus LOL. *See* Neb. UCC § 9-327(3) (2010).

---

[2] In accordance with Fed. R. Civ. P. 5.2, FNBO has redacted all but the last four digits of the account numbers in its briefs and evidentiary submissions.

III.    **FNBO'S SWEEPS OF PJSCC'S DEPOSIT ACCOUNT TO PAY DOWN PJSCC'S LINE OF CREDIT WITH FNBO FUNCTIONED AS A SETOFF.**

As the Nebraska Supreme Court has pointed out, how one exercises a right of setoff is not well defined. *See Davis Erection Co., Inc. v. Jorgensen*, 248 Neb., 297, 306, 534 N.W.2d 746, 752 (1995). Recognizing the economies and efficiencies created by setoff rights, Courts have liberally construed what acts constitute the exercise of setoff rights going so far as to recognize that book entries are sufficient. *See id.*, 248 Neb. at 310, 534 N.W.2d at 754 (explaining that the setoff right is "the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other" and that the "right is constantly exercised by business men in making book entries whereby one mutual debt is applied against another").

"A bank has a right to appropriate the deposit of its customer to satisfy debts owed to it by the customer." *F.C. Imports v. First Nat'l Bank of Boston*, 816 F. Supp. 78, 90 (P.R. 1993). "Setoff by a bank ordinarily occurs when the bank offsets indebtedness owed it by a debtor on a promissory note against indebtedness it owes the debtor in the form of funds held in the debtor's bank account." *In re Raanes*, 17 B.R. 164, 166 (Bankr. S.D. 1982). FNBO had the right on a daily basis to apply funds sitting within PJSCC's deposit accounts against debts owed by PJSCC to FNBO. This is precisely what FNBO did during September and October 2009 when indistinguishable funds were deposited in PJSCC's deposit accounts and periodically applied to pay down PJSCC's loan balances. (FNBO Evidence Index, Exhibit 1, Exhbit H.)[3] In this sense, FNBO was simply making book entries where it was applying monies owed to PJSCC by FNBO

---

[3] It should be noted that Exhibit H to Exhibit 1 in FNBO's Evidence Index (Filing No. 174-9) contains an obvious misnomer in the heading in that it refers to the accounts as those of "Maverick Feeders, Inc." Clearly, the heading should properly read the accounts of "Paul Johnson & Son's Cattle Co., Inc."

by way of PJSCC's deposits against monies owed by PJSCC to FNBO on its credit line. These pay downs functioned as setoffs for which FNBO has priority against LOL. *See, e.g., Kentucky Highlands Investment Corp. v. Bank of Corbin, Inc.*, 217 S.W.3d 851, 856 (Ky. App. 2006). ("A depository bank may properly exercise its right of setoff against a secured party who seeks to assert an interest in a commercial deposit account – regardless of whether the secured party claims a security interest in the deposit account as original collateral or its proceeds.").

## IV.   EVEN IF LOL COULD DEMONSTRATE THAT FNBO RECEIVED THE PROCEEDS FROM THE SALE OF THE MAVERICK CATTLE, FNBO IS PROTECTED AS A TRANSFEREE OF FUNDS FROM A DEPOSIT ACCOUNT.

Aside from challenging whether Demand Deposit Account No. XXXXX7549 is a "deposit account" as defined under Neb. UCC § 9-102(29), LOL does not contest the applicability of Neb. UCC § 9-332(b) to the facts of this case.[4] Instead, LOL argues that the collusion exception to § 9-332(b) applies. As the comments to § 9-332 indicate, the collusion exception to § 9-332(b) is the most protective (i.e., least stringent) standard found within the UCC. The comments make clear that for the collusion exception to apply, the claimant must show that the transferee was a "bad actor" in the transaction. This requires the claimant to show more than mere notice or knowledge of another party's claim to the proceeds or funds in the deposit account. *See* UCC § 9-332 cmt. 4; *see also* White & Summers, 4 *The Uniform Commercial Code* § 33-10 (6th ed. 2010) ("Normally knowledge that the payment violates Secured Creditor One's security interest is not enough for 'collusion.'"). The collusion exception in essence requires the claimant to show that the transferee acted in "bad faith," a standard that "makes it very difficult to invalidate the transfers" from a deposit account. Clark and Clark, 2

---

[4] "There is no reason that [a depository bank's] exercise of setoff against the deposit account should not qualify as a protected transfer under UCC § 9-332(b)." Clark and Clark, 2 *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 10.01[2][g] at 10-18 (Rev. ed. Apr. 2010).

*The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 3.10[5] at 3-85 (Rev. ed. Apr. 2010).

For reasons which will be more fully set forth below, there is no evidence whatsoever that FNBO acted in bad faith with respect to the funds deposited in PJSCC's deposit accounts held at the bank. FNBO's actions were consistent with the parties' course of dealing and course of performance with respect to their deposit, loan, and treasury services agreements. There was no effort on the part of FNBO to seize or freeze any funds that would otherwise belong to LOL. Rather, funds that were deposited by PJSCC in its deposit account were transferred out of and among PJSCC's various deposit accounts in the ordinary course of business in a manner consistent with the parties' contractual agreements.

LOL relies upon the case of *In re Machinery, Inc.*, 342 B.R. 790 (Bankr. E.D. Mo. 2006), together with the official comments to the repealed version of Article 9, in support of its argument that Neb. UCC § 9-332(b) does not protect FNBO from LOL's conversion claim. However, the case of *In re Machinery* and the official comments to the repealed version of Article 9 are consistent with the fact that LOL must demonstrate *more than* mere knowledge of LOL's security interest to establish a conversion claim against FNBO:

> The transferee's knowledge of the existence of the secured party's security interest was insufficient to take the transfer out of the scope of Comment 2(c), even if the transferee was a junior secured creditor. Additionally, the transferee was under no duty to identify and segregate the cash proceeds even if it knew of the secured party's interest, provided that the transferee had no contractual obligation to do so. Rather, the secured creditor was required to demonstrate something more than the transferee's mere knowledge of its security interest to prove that the payment was outside the ordinary course of business.

*In re Machinery, Inc.*, 342 B.R. at 798. In fact, the court in *In re Machinery* even noted that the new standard contained within revised Article 9 (Neb. UCC § 9-332) is more protective of

depository banks as "there are cases where the secured party would have prevailed under comment 2(c) to section 9-306 but cannot prevail under the more deferential collusion standard contained within section 9-332(a) of Revised Article 9." *Id*. According to one leading authority, "[t]his shift from an ordinary-course-transfer test to a collusion test should make it much more difficult for secured lenders to recover from transferees on a conversion theory, even if the transferee is a competing secured creditor who filed later." Clark and Clark, 2 *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 10.01[2][g] at 10-17 (Rev. ed. Apr. 2010).

Therefore, absent a showing of "collusion," FNBO is protected against LOL's conversion claims to the extent that funds were transferred from PJSCC's deposit account to pay down PJSCC's line of credit with FNBO. And, for the reasons set forth below, LOL has not come forward with even a scintilla of evidence establishing collusion on the part of FNBO.

## V.   UNDISPUTED EVIDENCE IN THE RECORD SHOWS THAT FNBO DID NOT "CONSPIRE" OR "COLLUDE" WITH PJSCC TO CONVERT ANYTHING.

While it may be true that FNBO was informed of LOL's purported security interest in the cattle placed by Maverick with PJSCC before the proceeds from the sale of this cattle were deposited in PJSCC's checking account at FNBO, and FNBO may have even discussed with PJSCC LOL's and Maverick's rights with respect to the proceeds, these facts do not establish a *prima facie* case for conversion in light of the aforementioned statutory protections for deposit institutions with respect to deposit accounts in which they have a security interest. Here again, statutory provisions within the Nebraska Uniform Commercial Code govern the analysis. Neb. UCC § 9-341 (2010) provides as follows:

> 9-341 Bank's rights and duties with respect to deposit account.
>
> Except as otherwise provided in section 9-340(c), and unless the bank

otherwise agrees in an authenticated record, a bank's rights and duties with respect to a deposit account maintained with the bank are not terminated, suspended, or modified by:

> (1)     the creation, attachment, or perfection of a security interest in the deposit account;
>
> **(2)     the bank's knowledge of the security interest; or**
>
> **(3)     the bank's receipt of instructions from the secured party.**

(Emphasis added.) The official comments to Neb. UCC § 9-341 explain the policy rationale for providing additional protection to depository banks:

> This section is designed to prevent security interests in deposit accounts from impeding the free flow of funds through the payment system. Subject to two exceptions, it leaves the bank's rights and duties with respect to the deposit account and the funds on deposit unaffected by the creation or perfection of a security interest or by the bank's knowledge of the security interest. In addition, the section permits the bank to ignore the instructions of the secured party <u>unless it had agreed to honor them</u>[5] or unless other law provides to the contrary. A secured party who wishes to deprive the debtor of access to funds on deposit or to appropriate those funds for itself needs to obtain the agreement of the bank, utilize the judicial process, or comply with procedures set forth in other law. . . .

(Emphasis added.)

The court in *Kentucky Highlands* relied upon UCC § 9-341 when it rejected the collusion allegations of a secured creditor against a depository bank. Specifically, the *Kentucky Highlands* court found as follows:

> A depository bank no longer bears the burden to ascertain the source of funds deposited into its customers' accounts and to determine whether

---

[5] This comment is in reference to Neb. UCC § 9-341's exception where the bank agrees to subordinate its statutory rights in an "authenticated record." "Authenticate" and "record" are each separately defined terms within the Nebraska UCC. LOL has come forward with no evidence of an "authenticated record" from FNBO disclaiming its rights in the PJSCC deposit account. *See, e.g.*, Neb. UCC § 9-102(7) (2010) ("'Authenticate' means: (A) to sign; or (B) to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record."); Neb. UCC § 9-102(69) (2010) ("'Record', except as used in 'for record', 'of record', 'record or legal title', and 'record owner', means information that is inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form.").

there is a creditor who may have a lien on those funds before a bank can assert its rights as a secured creditor — namely, its rights to set-off against the account.

***

The Bank was statutorily authorized to ignore even direct "instructions" from Kentucky Highlands with respect to its conduct toward the deposit account. Kentucky Highlands failed to avail itself of direct agreement with the Bank or to become the Bank's customer as provided by statute in order to protect its interests. The Bank was entitled to judgment as a matter of law with respect to this issue, and the trial court did not err by granting the summary judgment.

*Kentucky Highlands*, 217 S.W.3d at 856-58.

The most that the evidence submitted establishes was the FNBO knew of LOL's purported security interest before PJSCC began depositing the proceeds from the sale of the cattle placed by Maverick at PJSCC in PJSCC's account. There is simply no evidence that the discussions between FNBO and PJSCC resulted in a plan or conspiracy to improperly deprive any person of any right or interest.

LOL describes the evidence supporting collusion as "overwhelming," however, a close examination of the evidence reveals that FNBO was not a participant in any plan or conspiracy to convert the proceeds of the sale of the cattle placed by Maverick at PJSCC. Robert Johnson testified that the decision to retain the proceeds from the sale of the 2009 Maverick Cattle was his made after consulting with PJSCC's counsel. (FNBO Evidence Index Exhibit 3, 138:24-140:10; Exhibit 9, 52:21-55:16.) Mr. Johnson acknowledged that FNBO did not even "encourage" or "suggest" to Mr. Johnson that PJSCC retain the proceeds from the sale of the cattle. (FNBO Evidence Index Exhibit 9, 30:18-31:2.).

This testimony from Mr. Johnson conclusively demonstrates that FNBO was not a "co-conspirator" in any plan or scheme to deprive LOL of its purported rights in the cattle placed by

Maverick at PJSCC. *See Ashby v. State*, 279 Neb. 509, 526, 779 N.W.2d 343, 357 (2010) (a conspiracy claimant must be able "to prove the existence of at least an implied agreement . . . to accomplish an unlawful or oppressive object, or a lawful object by unlawful or oppressive means"). There is simply no evidence of any type of agreement between FNBO and PJSCC to convert anything. To the contrary, PJSCC prudently acted on the advice of *its counsel*. In light of the testimony above from Mr. Johnson, it cannot credibly be argued that FNBO acted in concert with anyone to accomplish any unlawful or oppressive object.

FNBO's actions with respect to the funds contained within PJSCC's deposit account were consistent with the parties' course of dealing and performance, and were in accordance with contractual agreements which had been in place for years. The deposit and loan account balances during the period in which PJSCC was selling the cattle placed by Maverick and depositing their proceeds demonstrate that that there was no concerted plan or effort to deprive any person of any property or right. On some days funds were swept from PJSCC's deposit account to pay down its credit line with FNBO, while on other days during this period *funds were drawn* from PJSCC's credit line and deposited within its deposit accounts. The fact that FNBO continued to advance money to PJSCC on PJSCC's line of credit after PJSCC deposited the proceeds of the sale of the cattle placed by Maverick with PJSCC in PJSCC's deposit account in and of itself undermines any conspiracy claim against FNBO. *See, e.g., City Bank v. Compass Bank*, No. EP-09-CV96-KC, 2010 WL 1959808 at *14 (W.D. Tex. May 12, 2010) (finding no collusion between the bank and the depositor where proceeds deposited in deposit account and used to pay down line of credit was subsequently drawn upon by the debtor).

## VI.    LOL SHOULD NOT BE PERMITTED TO AMEND ITS COMPLAINT.

In implicit recognition of the strength of FNBO's UCC rights to the deposited proceeds,

LOL makes a desperate plea to the Court that it should be allowed to amend its Amended Complaint against FNBO to include a fraud claim. To the extent LOL's Opposition Brief suffices as a motion for leave to amend its Amended Complaint,[6] FNBO submits that the Court should deny LOL's "motion", for two reasons. First, LOL's "motion" is untimely. As LOL notes in its Opposition Brief, the deadline for amending pleadings expired over three months ago. (Filing No. 51.) Discovery in the case has closed. FNBO has not had an opportunity to conduct discovery on any fraud claim asserted by any party. Even if the Court were to reopen discovery for that purpose, motion deadlines and potentially the January 3, 2011 should, in fairness, be moved as well. Rather than postponing the trial date, which all parties as well as the Court have been working towards, the Court should deny LOL's untimely request.

Second, for the reasons discussed in FNBO's earlier briefs, there is simply no factual basis for asserting that FNBO defrauded LOL. Indeed, the fact that LOL has never asserted such a claim against FNBO is telling. The alleged statements that LOL claims give rise to a fraud claim occurred well over one year ago and prior to LOL's filing of its Complaint and Amended Complaint. If LOL truly believed that FNBO's purported representations were fraudulent, then it should have alleged as much when it decided to bring this action. The fact that LOL did not assert such a baseless claim at the time of filing and did not seek until now to amend its pleadings to assert such a claim demonstrates that LOL's purported fraud claim is nothing more than a desperate attempt to breathe life into the legally deficient claims it has attempted to assert against FNBO to date.

---

[6] NECivR 15.1 requires a party who moves for leave to amend a pleading to attach an unsigned copy of the proposed amendment which clearly identifies the proposed amendments. LOL's "motion" to amend its pleading clearly fails to comply with this rule. Apparently, LOL is a stickler for complying with the Court's rules only when they apply to other parties. (Filing No. 189.)

**CONCLUSION**

For the foregoing reasons, FNBO respectfully requests that this Court find that there is no genuine issue of material fact with respect to its claim for summary judgment on LOL's claims of conversion and conspiracy, and enter summary judgment in its favor on these claims.

Dated this 8th day of October, 2010.

First National Bank of Omaha, Defendant,

By: /s/Thomas O. Kelley_____
    William F. Hargens (#16578)
    Thomas O. Kelley (#22667)
    McGrath North Mullin & Kratz, PC LLO
    Suite 3700 First National Tower
    1601 Dodge St.
    Omaha, Nebraska 68102
    (402) 341-3070
    (402) 952-1848 fax
    whargens@mcgrathnorth.com
    tokelley@mcgrathnorth.com

    Attorneys for Defendant, First National
    Bank of Omaha

## CERTIFICATE OF SERVICE

I certify that on the 8th day of October, 2010, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David A. Domina
ddomina@dominalaw.com

Mark D. Raffety
mraffety@dominalaw.com

Shawn M. Nichols
snichols@cadlaw.com

Steven W. Sanford
ssanford@cadlaw.com

Jonathan C. Miesen
JCMiesen@stoel.com

/s/Thomas O. Kelley_____
Thomas O. Kelley