UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| LOL FINANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT P. JOHNSON AND KERI J. MALOLEY, Individually and dba PAUL JOHNSON & SONS CATTLE CO., INC., JOHN DOE, ABC COMPANY, and FIRST NATIONAL BANK OF OMAHA,<br><br>Defendants<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - -<br><br>PAUL JOHNSON & SONS CATTLE CO., INC.,<br><br>Third Party Plaintiff,<br><br>v.<br><br>MAVERICK FEEDERS, INC., a South Dakota corporation, SHON SAWYER and JULIE SAYWER, husband and wife,<br><br>Third Party Defendants. | No. 09-cv-3224<br>Judge Kopf<br><br><br>REPLY BRIEF IN SUPPORT OF THIRD PARTY DEFENDANTS' MOTION TO AMEND ITS CROSS CLAIM AND COUNTERCLAIM |

## **INTRODUCTION**

The Court now has before it detailed allegations and supporting documents showing that the Feed Yard Defendants planned to keep all the proceeds from the sale of Maverick cattle, whether justified or not. The decision was planned before Maverick began shipping cattle. The Feed Yard disguised its true plan through misdirection, lack

1

of disclosure and false statements. So what Maverick believed was an arms-length business transaction was actually a premeditated heist. With these specific allegations, concretely supported by testimony and documents, Maverick is now able to satisfy its burden and the motion to amend to assert a claim of fraud, should be granted.

## RESPONSIVE ARGUMENT

**1. Maverick's unrefuted allegations rise far beyond a mere business dispute.**

The Feed Yard's resistance to the motion is telling. Rather than quibble with damaging evidence gathered in discovery, the Feed Yard instead urges the Court to adhere to earlier rulings without any compelling reason for doing so. The Feed Yard presents no direct challenge to the very specific allegations Maverick is able to now make with the benefit of completed discovery.

Instead the Feed Yard claims this is just a run-of-the-mill business dispute. There is one problem with this argument: It is now undisputed that the Feed Yard planed to keep all the proceeds from the sale of Maverick's cattle before they arrived and regardless of how much was owed. *See* LOL's Statement of Undisputed Material Facts at ¶¶ 46-50 (Dkt# 154). Against this revelation, the Feed Yard can no longer characterize this as a business dispute. It was a trap from the beginning, baited with fraudulent representations. The responsive brief acknowledges that Maverick pleaded its claim in such a way and the issue is over.

**2. Maverick's allegations are firmly supported by the record.**

The record is replete with evidence supporting Maverick's allegations, not only in Maverick's motion, but in the record attached to collateral motions. *See e.g.* LOL's

Motion for Summary Judgment and Supporting Statement of Undisputed Material Facts ("SUMF") (Dkt # 154); and FNBO's Supplemental Index (Dkt #191). Indeed the expanded record before the Court contains the following evidence supporting Maverick's claim:

1. The Feed Yard had increasing debt and a lack of borrowing capacity with FNBO beginning in December of 2008. *See* FNBO Index (Dkt #191) at Exhibit 14(F)(page 1 and 5).

2. The Feed Yard told its lender that its debt problems stem from Maverick. *See Id* (page 1); *see also* LOL SUMF at ¶¶ 46-50 (Depo. Exhibit 53).

3. At the time Maverick still had 1,200 head of cattle at the Feed Yard, and Maverick's debt position (if any) was uncertain until the cattle were sold. *See* FNBO Index (Dkt #191)Exhibit 14(F)(page 2).

4. The five lots of cattle the Feed Yard primarily relies upon as supporting an "old debt" obligation for over $1 million, were closed out <u>after</u> December of 2008. *Id.*

5. The Feed Yard was unable to furnish in discovery any contemporaneous invoice supporting its claimed debt. *See* Sawyer Affidavit at ¶ 17; Maverick's Index (DKT # 166) at Exhibits 2-3.

6. The Feed Yard knew in February of 2009 that Maverick was sending additional lots of cattle (which the Feed Yard encouraged Maverick to deliver on the promise that the cattle could be financed and with quotes of competitive corn contracts that would yield lower feed costs). *Id*; *see also* Proposed Second Amended Complaint at ¶ 15.

3

7. As the cattle were being delivered the Feed Yard, through Johnson, had already decided to keep all the proceeds and also decided to levy fake feed adjustment charges on the cattle. *See* LOL SUMF at ¶¶ 46-50, and 72-74.

8. Throughout the roughly six months it fed the Tri-County cattle, the Feed Yard, through Johnson, disguised its true intentions and assuaged any concerns expressed by Shon Sawyer about the lack of information and suspiciously high feed bills. *See* Sawyer Affidavit at ¶¶ 14-18; *see also* Proposed Second Amended Complaint at ¶¶ 27-29, and 39- 41.

9. The same misinformation campaign was employed to keep LOL at bay while the Feed Yard pocketed the funds. *See* LOL SUMF at ¶¶ 91-100.

10. When the proceeds exceeded the amount the Feed Yard could even attempt to recover with a straight face, it made plans to send the rest of the cash to a buddy, rather than make any effort to pay Maverick or LOL. *See* LOL SUMF at ¶ 75-79.

11. Even under its own warped position, the Feed Yard admits that at least $426,949.00 of the proceeds from the sale of Maverick's cattle, belong to Maverick. *See* LOL SUMF at ¶ 122.

12. Even after the Court enjoined the use of the sale proceeds and ordered the proceeds in to trust, the Feed Yard intercepted a way-ward check in the amount of $491,534.72. *See* LOL SUMF at ¶ 104-111.

These are just a few key examples of facts in the record showing that the Feed Yard set Maverick up. Prior to this setup Maverick had for years been delivering cattle to be fed, fatted and sold for profit. The Feed Yard had previously taken its feeding costs

from the proceeds and sent Maverick a check for the balance of the proceeds. The customary practice did not happen here, nor did the Feed Yard ever intended to follow the usual course of business.

The record plainly shows actionable fraud. The record before the court shows as <u>fact</u> that the Feed Yard: (1) made knowingly false assertions of fact to secure and keep the Tri-County cattle; (2) the assertions were made with the intention of keeping all the proceeds from the sale of Maverick cattle even though the Feed Yard now admits Maverick is owed at least $426,949.00; (3) Maverick reasonably relied on the Feed Yard's representations and (4) Maverick was plainly damaged. *See Cummings v. Curtiss,* 361 NW2d 508 (Neb. 1985). Maverick was entitled to rely on the Feed Yard's representation and is permitted by law to assume the good conduct of others. *See e.g. Mid-States Equipment Co. v. Evans,* 214 NW2d 496, 497 (Neb. 1974).

**3. Maverick should be permitted to conform its claim with the discovery.**

It is true that Maverick's fraud claim has evolved over time. That evolution should not cause the Court any pause. *See e.g.* FRCP 8(3)(g). Most of the explosive documents proving the Feed Yard was planning to take all the money, before the Tri-County cattle were delivered, were not produced until mid-August. Also, Maverick did not learn that the feed adjustment charges were bogus until Bob Johnson's deposition on August 4. When Maverick attempted to follow-up with discovery regarding documentation supporting the feed adjustment charges, the Feed Yard admitted that (1) it had no documents and (2) admitted the charges were tucked into the bills because Maverick presented a so-called "credit risk". *See* Maverick Index (Dkt # 172) Exhibit 1

at pg. 19. This was very different from the innocent explanation given to Sawyer when the feed adjustment charges first started showing up on the bill.

In addition, Maverick has sought evidence of the now ubiquitous "old debt" (now claimed at over $1 million) that the Feed Yard has been claiming since last November as a basis for setoff. At least five different values have been ascribed to this debt. *See e.g. Id* at Exhibits 1 and 4. The Feed Yard has only recently produced (woefully incomplete) records supporting this debt. *Id* at Exhibit 3. Even these superficial documents have roughly $100,000 in mathematical errors favoring the Feed Yard which it apparently refuses to deduct from its latest "old debt" figure. *See Id.* at Exhibit 2.

From the very beginning its has been obvious that something was amiss in the way the Feed Yard strung Maverick along and kept all the proceeds, particularly its hazy reliance on old debt. With discovery Maverick has been able to fill in the gaps and articulate its fraud claim in concrete details. With the specifics now before the Court, it is appropriate to proceeds with allowing Maverick to file its amendment. The gist of Maverick's claim has been in play dating back to January 15. The Feed Yard has had ample opportunity to conduct discovery and does not assert any prejudice if the motion is granted. The sole issue is whether Maverick has stated a claim for fraud. We believe we have and respectfully request the Court grant leave to allow us to file our amended cross-claim.[1]

---

[1] Maverick expects to join in LOL's resistance to FNBO's motion for summary judgment. The resistance does alternatively seek leave to assert a new claim against FNBO in the event FNBO's new defenses are successfully considered on the merits. FNBO had not yet moved for summary judgment at the time Maverick asserted this motion to amend. Although it now may be strategically advantageous to do so, Maverick had not intended this motion to encompass a new claim against FNBO and has stipulated as such. This footnote is intended to provide additional clarity on this issue.

## CONCLUSION

For all the reasons stated above, Maverick requests that the Court grants its motion to amend in its entirety.

Dated this 14th day of October, 2010.

        CADWELL SANFORD DEIBERT & GARRY, LLP

        /s/ Shawn Nichols
        Steven W. Sanford
        Shawn Nichols
        200 East 10th Street, Suite 200
        PO Box 2498
        Sioux Falls, SD 57101-2498
        (605) 336-0828
        E-mail: *snichols@cadlaw.com*

        *--Electronically Filed—*