UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

LOL FINANCE COMPANY,                    Case No. 09-CV-3224

                    Plaintiff,

v.

PAUL JOHNSON & SONS CATTLE              BRIEF IN RESISTANCE TO
CO., INC., FIRST NATIONAL BANK          DEFENDANT FIRST NATIONAL
OF OMAHA, ROBERT P. JOHNSON             BANK OF OMAHA'S
AND KERI J. MALOLEY, JOHN DOE           MOTION FOR
AND ABC COMPANY,                        SUMMARY JUDGMENT
                                        (DKT#169)
                    Defendants.


PAUL JOHNSON & SONS CATTLE
CO., INC.,

                    Third-Party Plaintiff,

v.

MAVERICK FEEDERS, INC., SHON
SAWYER AND JULIE SAWYER,

                    Third-Party Defendants.

## INTRODUCTION

FNBO has moved for summary judgment on all claims asserted against it. In

support FNBO argues it has a security interest in all the proceeds from the sale of

Maverick's cattle even though its debtor did not own or have any interest in the cattle

beyond feed costs. The UCC provisions cited by FNBO are thus inapplicable. FNBO

also claims Maverick's damages are speculative and that it deserves summary judgment

1

as a result without explaining why.  As demonstrated below, both arguments should be rejected.

**ARGUMENT AND AUTHORITY**

### A.  Maverick Joins in LOL's Resistance.

FNBO initially argues priority over Maverick's cattle proceeds by virtue of new defenses under the UCC.   LOL has explained why these new defenses should fail for procedural and substantive reasons.  Maverick adopts and incorporates by reference, the responsive argument and responsive statement of undisputed material facts filed by LOL (DKT #182 and 194). Additional reasons why the motion should be rejected are below.

In addition to LOL's responsive statement of undisputed material facts, Maverick responds as follows:

**Response to state of Fact No. 11:**  Maverick additionally notes the security agreement relates to specific cattle financed by funds advanced under a promissory note, and the costs to feed and care for the cattle. *See* PID # 2691. No funds were advanced by FNBO on the Tri-County cattle at issue in this case.  Funds were advanced instead by LOL. *See* Sawyer Affidavit at ¶ 11.  As for any other secured interests under the note, the Feed Yard has been fully paid for the costs of caring and feeding for the Tri-County Cattle. *See* Johnson Depo p 86-87; kalkowski Depo p 219-220.

### B. FNBO's UCC Defenses Fail Because it had no Security Interest in Proceeds that did not Belong to its Debtor.

In advancing its position, FNBO relies primarily on Neb UCC 9-327 and 9-340, dealing with priority of security interests in deposited proceeds.  The UCC provisions

2

cited by FNBO are inapplicable to this case as explained by LOL.   FNBO's argument is also defeated for another reason.

According to the argument, FNBO seems to indicate that it has greater rights in Maverick's cattle than even its debtor.  This is neither intuitive nor supported by the law. Indeed, the UCC does not apply to this transaction as FNBO had no security interest in Maverick's cattle <u>because the cattle were not owned by its debtor</u>.  *Rohweder v. Aberdeem Production Credit Ass'n*, 765 F2d 109, 111 (8th Cir. 1985)(reversing a directed verdict against livestock owner's conversion claim against bailor's lender).  According to the Eighth Circuit, the security interest of a bailee's creditor does not attach to the goods which are subject to the bailment. *Id*.  In other words, FNBO cannot claim a security interest in Maverick's cattle and thus the UCC provisions it relies upon are completely inapplicable.

Maverick did sign a security agreement with the Feed Yard that was assigned to FNBO.  *See* PID # 2691.  However, the agreement relates to specific cattle financed under the promissory note, and feed costs.  *Id*.  No cattle financed under this promissory note are at issue here and FNBO does not argue otherwise.  Furthermore, even if FNBO could claim a security interest in Maverick's cattle, that interest would plainly be limited to the costs of feed and care which was paid. *See* Johnson Depo p 86-87; kalkowski Depo p 219-220.  The roughly $2 million in excess proceeds at issue in this case are not subject to a security interest possessed by either FNBO or its debtor, and FNBO's reliance on the UCC is therefore misplaced for this additional reason.

3

The facts of *Rohweder* are helpful. In *Rohweder* two parties formed a complex cattle partnership. The party in possession of the cattle filed for bankruptcy protection and its lender took the cattle. *Rohweder*, 765 F2d at 110.     Rohweder, who claimed an interest in the cattle sued the lender for conversion. *Id.* The trial court granted a directed verdict concluding that Rohweder intended to sell the cattle and thus there was no bailment. *Id.* The Eighth Circuit disagreed and reversed holding there was a question of fact as to who owned the cattle and if Rohweder had an ownership interest under the partnership, the lender's security interest could not attach by virtue of the bailee's possession. *Id.*

This case is even easier. Maverick owned the cattle and FNBO even concedes as much for purposes of its motion. *See* FNBO's Statement of Material Fact ¶ 12. As such, FNBO cannot claim a security interest in Maverick cattle through the Feed Yard and summary judgment should be denied.

### C.   The UCC Alternatively is Inapplicable to the Transaction at Issue.

The UCC provisions cited by FNBO are additionally inapplicable as they deal with the priority of "security interests". The proceeds deposited in the Feed Yard's account, were Maverick's proceeds. There is no competing security interest. None of the provisions of Neb UCC 9-109(a) ("this chapter applies to") relate to Maverick's claim of ownership to the money. Upon review of the provisions of Neb UCC 9-109, it is even more obvious that FNBO cannot defeat Maverick's claim as FNBO cannot claim greater rights than its debtor.

4

## D.  FNBO's Should be Estopped from Claiming a Security Interest.

Even if the Court gives credence to FNBO's priority arguments, there are still fact

questions as to collusion under Neb UCC 9-332.  In addition, FNBO's priority arguments

are also defeated by equity and estoppel.  Neb UCC § 1-304 is noteworthy on this point

as this code provision allows UCC rights to be supplemented by common law, including

equity and estoppel. *Id.*    Here the Feed Yard was not considered to be in default and so

the exercise of the right of setoff seems particularly curious and inappropriate. *See*

*Miracle Hills Centre Ltd. Partnership v. Nebraska Nat. Bank Of Omaha*, 434 NW2d 304,

306 (Neb. 1989);  Kalkowski Depo. p 217-218; Kalkowski Affidavit at Exhibits A-E

(defining default).  In fact, the cases cited by FNBO primarily deal with priority claims

against a debtor in default. *See eg Kentucky Highlands Investment Corp. v. Bank of*

*Corbin, Inc.*, 217 SW3d 851 (Ky. App. 2006); *City Bank v. Compass Bank*, 2010 WL

1959808 (WD Tex May 12, 2010).  That is certainly not the case here.

Because the Feed Yard was not in default, FNBO should be estopped from

claiming the right of setoff.   The evidence in the record against FNBO is frankly

stunning.  Even though FNBO knew the cattle belonged to Maverick it acted

intentionally to deprive Maverick of its rights.  First FNBO and its counsel conceived of

a plan to have the Feed Yard take all of the proceeds from the sale of Maverick's cattle.

*See* Depo Ex. 53 (PID # 680); Kalkowski Depo p 67-74 (PID # 526-28); Johnson Depo p

768-70 and 76-79 (PID 360-362).  FNBO approved of the plan because it wanted the

Feed Yard to pay down debt. *See* Kalkowski Depo p 59 and 62 (PID # 524 and 525).

After learning of LOL's security interest in the cattle FNBO continued to work with the

5

Feed Yard to find ways around LOL's interest. *See* LOL's Reply Memorandum (DKT #194) at PID #3261-3262.

Finally FNBO knew the Feed Yard was going to keep all the proceeds, knew the Feed Yard was claiming fictitious fees against the proceeds and knew that the proceed deposits would be swept to pay down the Feed Yard's operating credit line. *Id*. Despite this knowledge, Chris Kalkowski assisted the Feed Yard in a misinformation campaign and told LOL the proceeds were segregated and that LOL should be paid. *See id* at PID # 3262. In other words, FNBO worked in concert with the Feed Yard to take all the proceeds from Maverick's cattle. Based on this conduct, FNBO cannot now use the UCC to wash its hands and it should alternatively be prevented from seeking equitable relief of setoff and otherwise estopped from claim priority.

### E.  Maverick has stated at Claim for Conversion and Civil Conspiracy.

As explained above, FNBO has no right to claim a security interest in Maverick's cattle. As such, FNBO's argument that Maverick cannot establish either a conversion or a civil conspiracy, fail as a matter of law. Indeed, in order for FNBO to obtain summary judgment in this case, this Court must overrule the Eighth Circuit decision in *Rohweder*. Rohweder authorized a conversion claim to proceed to trial under nearly identical circumstances and the result should be the same here. *Rohweder*, 765 F2d at 111

### F.  Maverick's Damages are not Speculative.

In a final salvo, FNBO claims Maverick's damages are speculative and that this should somehow translate into summary judgment. FNBO does not explain in what way

6

Maverick's damages are speculative.   We suspect FNBO's argument is so vague because it chose to conduct no discovery at all on Maverick's damages.

In any event, the record contains plenty of evidence regarding Maverick's past performance.  Less feed and acquisition costs, Maverick made money per head on the Tri-County cattle at issue in this lawsuit. *See* Sauder Exhibit B (Buyer Recaps) and Miesen Summary Judgment Affidavit at Exhibit B (Closeout Statements).  The cattle market is even better today.[1]   Unfortunately Maverick has been frozen out of the market as a result of the Defendants' taking the proceeds from the sale of cattle and forcing Maverick in to default on its note with LOL.

It is not speculative to suggest that Maverick would have taken the Tri-County proceeds and reloaded with more feeder cattle as it had done every year for the past several years.   If fact, since 2003 Maverick has maintained an annual cattle inventory of between 8,000 and 11,000.  This year Maverick's inventory is about 500 head.   FNBO has also placed into the record, evidence of Maverick and Sawyer's historical financial performance and value of cattle inventory. *See* PID #3156 – 3169.  These documents confirm that Maverick has typically owned between $3 million and $11 million worth of cattle at any given time during the last seven years.

Maverick's past performance is as good an indicator as any as to its current losses.  Average cattle prices are a matter of public record.  Under Nebraska law, a plaintiff is not

---

[1] Both FNBO and the Feed Yard liberally site to USDA records in moving for summary judgment. *See* e.g. PID 3027-3038 (FNBO's Index DKT#191).  Maverick has additionally put into the record USDA data showing that feeder steer prices have gone down over the last year and fat cattle prices have gone up. *See* PID 2955.  In other words, over the last year feeder cattle have been cheaper to acquire and fat cattle more profitable to sell, meaning more profits for beef producers.  In fact, the spread between acquisition and sale prices are the best they have been in the last several years of USDA recorded data. *See id.*

required to present exact certainty as to future events. *Lis v. Moser Well Drilling and Services, Inc.,* 377 NW2d 98, 100 (Neb. 1985). Under Nebraska law, the owner of a business is permitted to testify as to its future lost profits, which FNBO readily concedes. *See e.g.* DKT#195.

   Against the evidence in the record, FNBO (1) does not challenge Maverick's historical cattle volume, (2) does not challenge that Shon Sawyer has bought and sold over 100,000 head of cattle in the last 17 years, (3) has yet to ask for Maverick and Sawyer's tax returns and financial statements which have been made available under FRCP 26(a)(1)(A)(iii), (4) does not dispute that the cattle market today is better than last year, (5) does not dispute that Maverick's cattle inventory has been decimated as a result of its forced default to LOL, and (6) does not dispute that Maverick's Tri-County cattle were also profitable (even though FNBO and the Feed Yard took off with most of the profits). In other words, FNBO has provided this Court with no details whatsoever as to why Maverick should be denied the opportunity to offer evidence of damages at trial, or why the <u>weight</u> of Maverick's damage testimony should be parlayed into summary judgment at this moment. The issue with Maverick's damages (if FNBO really has any) is ultimately a credibility question which should be resolved by a jury, not this Court. *See e.g., Brown v. Sandals Resort Int'l,* 284 F3d 949, 954 (8th Cir. 2002).

### CONCLUSION

   For all the reasons contained in this Brief, for the reasons set forth in LOL's responsive brief and responsive statement of undisputed material (Dkt # 182 ), and based

on the record before the Court, Maverick respectfully requests that FNBO's Motion for

Summary Judgment be denied in all respects.


Dated this _18_ day of October, 2010.

Cadwell Sanford Deibert & Garry, LLP

_____/s/ Shawn Nichols_____

Shawn M. Nichols
200 East 10th Street, Suite 200
PO Box 2498
Sioux Falls, SD  57104-2498
(605) 336-0828
Attorney for Third-Party Defendants