IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LOL FINANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL JOHNSON & SONS CATTLE CO., INC., FIRST NATIONAL BANK OF OMAHA, ROBERT P. JOHNSON and KERI J. MALONEY, JOHN DOE and ABC COMPANY,<br><br>Defendants.<br><br>───────────────────────────<br><br>PAUL JOHNSON & SONS CATTLE CO., INC.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>MAVERICK FEEDERS, INC., SHON SAWYER and JULIE SAWYER,<br><br>Third-Party Defendants. | CASE NO. 4:09-CV-3224<br><br><br>FIRST NATIONAL BANK OF OMAHA'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY MAVERICK FEEDERS, INC. |

## INTRODUCTION[1]

First National Bank of Omaha ("FNBO") respectfully submits this Reply Brief in further support of its Motion for Summary Judgment on all claims asserted against it by Maverick

---

[1] It should first be noted that Maverick Feeders, Inc. ("Maverick") filed its Resistance Brief beyond the time limit ordered by the Court. (Filing No. 135 (ordering parties to file responsive briefs to dispositive motions 17 calendar days plus 3 days for mailing after the filing of dispositive motions)). In this regard, Maverick's Brief should be stricken and not considered by the Court. *See, e.g., Jones v. Gale*, Case Nos. 8:04CV645, 4:04CV3194, 2005 WL 2388114 (D. Neb. Sept. 28, 2005) (striking resistance brief to summary judgment motion as untimely).

Feeders, Inc. ("Maverick").

In its opposition brief, Maverick joins in the arguments proffered by Plaintiff LOL Finance Company ("LOL") in opposing FNBO's Motion for Summary Judgment against LOL and, in addition, argues that FNBO's Motion for Summary Judgment against Maverick should be denied because: (1) "the UCC does not apply to this transaction as FNBO had no security interest in Maverick's cattle <u>because the cattle were not owned by its debtor</u>" (Maverick's opposition brief at page 3, emphasis in original); (2) FNBO should be estopped from exercising its "equitable" right of setoff; and (3) Maverick's purported "lost profits" damages are not speculative. Maverick's arguments do not square with the undisputed facts and/or with Nebraska law. For these reasons, the Court should grant FNBO's Motion for Summary Judgment.

## ARGUMENT

**I.  PJSCC INDISPUTABLY HAD RIGHTS IN THE PROCEEDS FROM THE SALE OF THE MAVERICK CATTLE.**

Maverick rests its primary defense to FNBO's Motion for Summary Judgment on its claim that FNBO's debtor, i.e. Paul Johnson & Sons Cattle Co., Inc. ("PJSCC") was not the owner of the cattle in question. This is true, but for purposes of the applicability of the dispositive UCC provisions, the determinative issue is not whether PJSCC **owned** the cattle in question. Rather, the determinative issue is whether PJSCC had **rights** in the **proceeds of the cattle** sufficient to give FNBO a security interest in those proceeds once they were deposited in one or more deposit accounts maintained by PJSCC at FNBO. The fact that PJSCC had such rights is established by the following facts which are not disputed by Maverick:

> 1.  At all relevant times, PJSCC was a deposit and loan customer of FNBO.

> 9.  Maverick consented to PJSCC's feeding and selling of

cattle that Maverick placed with PJSCC.

\*\*\*

15. PJSCC deposited the proceeds from the sale of the Maverick Cattle, along with the proceeds from the sale of other cattle separate from the Maverick Cattle, in its checking deposit account held at FNBO.

16. The checking account in which PJSCC deposited the proceeds from the sale of Maverick Cattle and other cattle to which Maverick makes no claim of interest was an account in which FNBO held a security interest perfected by control.

17. Neither LOL nor Maverick had control of PJSCC's deposit account in which PJSCC deposited the proceeds from the sale of the Maverick Cattle.

\*\*\*

19. The account in which the proceeds from the sale of the Maverick Cattle were deposited was PJSCC's business checking account at FNBO from which PJSCC drew funds to pay costs and expenses incurred in operating its feedyard.

20. PJSCC deposited proceeds derived from the sale of other cattle including cattle owned by PJSCC into the same account at FNBO in which it deposited the proceeds from the sale of the Maverick Cattle.

21. At no time was either Maverick or LOL the owner of any of PJSCC's demand deposit accounts held at FNBO.

\*\*\*

> 23. LOL, Maverick, PJSCC, and FNBO never entered into a written agreement with regard to the disposition and use of the funds deposited by PJSCC into its demand deposit accounts held at FNBO.

(Filing Nos. 175, 182 & 200.)

The above facts establish that PJSCC had the right to (1) sell the Maverick Cattle in PJSCC's own name and (2) deposit the proceeds in an account belonging to PJSCC. Maverick admits as much in its Third-Party Complaint when it made the following allegations:

> [Maverick] and PJSCC agreed that PJSCC would feed and care for the Cattle until they were ready to market. [Maverick] and PJSCC further agreed that PJSCC would market and sell the Cattle to meat-packing companies, take its fee for feeding and caring for the Cattle out of the proceeds and pay the balance to [Maverick]. (Filing No. 19 ¶ 21.[2])

\*\*\*

> . . . PJSCC gave its assurances that the proceeds were safely deposited with an account with Defendant First National Bank of Omaha. Consistent with earlier representations, [PJSCC] continued to assure Maverick Feeders that the parties would settle up at the end. (Filing No. 40 ¶ 17.)

Maverick's admission that PJSCC had (1) the right to care for, feed, and sell the Maverick Cattle, (2) the right to deposit the proceeds from the sale in a PJSCC deposit account, and (3) the right to retain at a minimum a portion of these proceeds indisputably establishes that PJSCC had "rights"[3] in the proceeds from the sale of the Maverick Cattle rendering the priority provisions within revised Article 9 applicable to, and determinative of, Maverick's conversion claim against FNBO. *See, e.g., American National Bank v. Joy*, 169 B.R. 931, 938 (Bankr. D. Neb.

---

[2] Although this quote is from LOL Finance Co.'s Amended Complaint, the allegations in this pleading were adopted by reference by Maverick. (Filing No. 40 p. 3 ¶ 2.)

[3] Neb. UCC § 9-203(b)(2) (2010).

1994) (finding that bank's security interest in the proceeds from the sale of hogs was superior to the claim of the alleged owner in the same proceeds where person to whom the hogs were entrusted had permission to market and sell the hogs); *Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 579 Pa. 275, 289, 855 A.2d 818, 827 (Pa. 2004) (analyzing conversion claim of purported owner of collateral under priority provisions of Article 9 of the Uniform Commercial Code).

Maverick suggests that the fact that PJSCC did not have title to the Maverick Cattle somehow precludes PJSCC from having an interest or right to their proceeds. Nebraska's Uniform Commercial Code makes clear that title or ownership is immaterial for the attachment of a security interest in collateral or its proceeds. *See* Neb. UCC § 9-202 (2010) ("Title to collateral immaterial. Except as otherwise provided with respect to consignments or sales of accounts, chattel paper, payment intangibles, or promissory notes, the provisions of this article with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor.").[4]

Maverick's reliance upon the Eighth Circuit's 1985 decision in *Rohweder v. Aberdeen Production Credit Ass'n,* 765 F.2d 109 (8th Cir. 1985) is misplaced. In *Rohweder,* the custodian of the cattle in issue (Bellman) entered into a "share agreement" whereby Bellman was to be paid for his services by receiving title to forty percent of the cattle's calf crop. Thus, under the terms of the "share agreement," Bellman's only rights in the cattle was his ownership interest in forty percent of the calf crop. In the case at bar, by contrast, PJSCC was to be paid for its services out of the proceeds of the cattle. Accordingly, in the case at bar, unlike in *Rohweder,* there can be no

---

[4] 9A Hawkland UCC Series § 9-203:12 (Rev. ed. Oct. 2010) (". . . Section 9-202 provides that the requirement that the debtor have rights in the collateral is not dependent upon whether the debtor has title to the collateral. That section clearly diminishes the importance of title when a provision of Article 9 concerns rights. Nonetheless and despite this diminution of title, some courts continue to equate rights in the collateral with the concept of title. This is an equation that is clearly inappropriate under the Code and has led to some bad decisions.").

5

dispute that PJSCC did in fact have rights in the cattle's proceeds. In fact, *both Maverick and LOL have admitted that PJSCC had rights in proceeds from the collateral* by virtue of its feed and yardage costs. (Filing No. 40 ¶ 17; Filing No. 18 ¶ 21.) While there is a genuine dispute between the parties with respect to the amount of PJSCC's claim and the extent of its rights in the proceeds, that dispute is immaterial to FNBO's Motion for Summary Judgment because there is no dispute that PJSCC did in fact have rights in the proceeds from the sale of the Maverick Cattle. Therefore, PJSCC had the right to deposit the funds derived from the sale of the Maverick Cattle in its deposit account at FNBO.

The account in which PJSCC deposited the proceeds from the sale of the Maverick Cattle was PJSCC's general checking account from which PJSCC paid for the general costs and expenses of operating its feedyard. Maverick admits that it knew that PJSCC was depositing the proceeds from the sale in PJSCC's account at FNBO and did not object thereto.[5] Under these circumstances, PJSCC was unquestionably more than a mere bailee and undeniably had a right to the funds it deposited in its checking account with FNBO.[6] *See, e.g., In re Lock*, No. 01-80007, Adv. No. 01-8044, 2002 WL 32001417 (Bankr. C.D. Ill. Sept. 6, 2002) ("The debtors' deposit of the cattle sale proceeds into the farm account was consistent with the established course of dealing with PCA and does not amount to conversion."); *see also American Bank & Trust v. Shaull*, 2004 S.D. 40 ¶ 16, 678 N.W.2d 779, 784 (2004) ("control rather than ownership determines a debtor's rights to collateral"); Neb. UCC § 2-403(2) (2010) ("Any entrusting of

---

[5] In contrast, in the *Rohweder* case there was evidence that some of the payments for the cattle owned by Rohweder were made directly by the purchasers to Rohweder as opposed to Bellman who was charged with selling the cattle. *See Rohweder*, 765 F.2d at 111.

[6] It should be noted that until Maverick asserted the argument in its Brief opposing FNBO's Motion, there has been no allegation by any party, in the pleadings or otherwise, that there was a bailment relationship between Maverick and PJSCC. *See, e.g., Turner v. Fehrs Neb. Tractor & Equipment Co.*, 259 Neb. 313, 316, 609 N.W.2d 652 (2000) (noting claimant's failure to plead bailment relationship).

possession of goods to a merchant for purposes of sale who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in the ordinary course of business.").

Once the proceeds from the sale of the Maverick Cattle were deposited in the PJSCC checking account, they were comingled with other PJSCC funds. Thus, there can be no credible dispute that FNBO's security interest in PJSCC's demand deposit account attached to the funds within the account, including proceeds from the sale of the Maverick Cattle. *See, e.g., Bank One, N.A. v. First National Bank of Baird*, Case No. 1:02-CV-100C, 2003 WL 22137171 at *4 (N.D. Tex. 2003) (finding that bank in which debtor deposited proceeds from sale of financed collateral had priority to funds deposited in debtor's account at bank even where debtor was depositing funds from kited checks in account).

II. **FNBO WAS ENTITLED TO EXERCISE ITS RIGHTS AS A SECURED PARTY OVER THE FUNDS CONTAINED WITHIN A DEPOSIT ACCOUNT TO WHICH IT HELD A SECURITY INTEREST PERFECTED BY CONTROL AND TO WHICH IT HAD A RIGHT OF SETOFF**

Once the proceeds of the sale of the Maverick Cattle were deposited and comingled within PJSCC's deposit account in which FNBO had a security interest perfected by control, FNBO's secured rights to the funds within the account had priority over any claim that Maverick otherwise had to them. Sections 9-327 and 9-340 of the Nebraska Uniform Commercial Code provide FNBO priority protections and superior setoff rights in funds within deposit accounts held at FNBO to which FNBO possesses a security interest. These rights are equally applicable to Maverick as they are to LOL. *See, e.g., American National Bank v. Joy*, 169 B.R. 931, 938 (Bankr. D. Neb. 1994) (relying on priority provisions within Article 9 of the UCC and finding that bank's security interest in the proceeds from the sale of hogs was superior to the claim of the alleged owner in the same proceeds where person to whom the hogs were entrusted had permission to market and sell the hogs); *Brown v. U.S.*, 622 F. Supp. 1047, 1050-51 (D.S.D. 1985) (relying on

priority provisions within Article 9 of the UCC and holding that security interest of lender of party to whom cattle were placed was superior to ownership claim of third party to the cattle at issue).

Maverick claims that FNBO's setoff right is an "equitable" right[7] which FNBO should be estopped from asserting due to its alleged "collusive" conduct. In support of this claim, Maverick attempts to distinguish the two cases principally relied upon by FNBO in support of its motion as cases involving debtors who were in default. *See, e.g., City Bank v. Compass Bank*, No. EP-CV96-KC, 2010 WL 1959808 at * 12 (W.D. Tex. May 12, 2010) (statutory protections within Article 9 of the Uniform Commercial Code for deposit-taking banks negates elements of conversion claim because the statutes permit the exercise of control over the property at issue by the deposit-taking banks); *Kentucky Highlands Investment Corp. v. Bank of Corbin, Inc.*, 217 S.W.3d 851, 856 (Ky. App. 2006) ("A depository bank may properly exercise its right of setoff against a secured party who seeks to assert an interest in a commercial deposit account – regardless of whether the secured party claims a security interest in the deposit account as original collateral or its proceeds.").

Maverick's attempt to distinguish *City Bank* and *Kentucky Highlands* fails though as the debtor's status had no bearing on the outcome of those cases. Rather, the determinate factor was the depository institution's rights *in the deposit account* as specified by Revised Article 9. In this case, it is undisputed that FNBO had (1) a security interest in PJSCC's deposit accounts, (2) perfected its security interest in PJSCC's deposit accounts by control, and (3) possessed a contractual right of setoff which permitted FNBO on a daily basis to setoff excess funds within

---

[7] Maverick's characterization of FNBO's setoff right as an equitable right demonstrates Maverick's misunderstanding of FNBO's defenses and fails to recognize priority of FNBO's statutory and contractual rights to the funds deposited in a deposit account which FNBO controls. FNBO's setoff right as asserted in this case is a legal right supported by its loan and deposit agreements with PJSCC as well as the common law. (Filing No. 174, Exhibit 1, Exhibits A-F.) Therefore, Maverick's argument as to how FNBO should be equitably estopped from claiming its setoff right is inapposite.

PJSCC's deposit accounts in order to pay down PJSCC's debt with FNBO. (Filing Nos. 175, 182 & 200.) These were in essence the same determinative facts in the *City Bank* and *Kentucky Highlands* cases. The one difference between those cases and this case is that the obligor and debtor to the secured party in both of those cases was also the depository bank's customer. In this case, Maverick is the obligor on the debt owed to the purported secured party (LOL), whereas, the bank customer owning the deposit account (PJSCC) is the obligor for debts due to the bank where the deposit account is held (FNBO). However, this factual difference is immaterial to the outcome of the case. If anything, the fact that FNBO's depositor, PJSCC, is one step removed from Maverick, the obligor and debtor for LOL's claimed security interest in the cattle, provides added justification for the application of the policy goal of protecting the payment system. *See, e.g.*, Neb. UCC § 9-341 cmt. 2 ("This section is designed to prevent security interests in deposit accounts from impeding the free flow of funds through the payment system."); *Kentucky Highlands*, 217 S.W.3d at 855 ("the drafters of Revised Article 9 and the legislature determined that the interests of depository banks, the free flow of commerce and the checking system are superior to the interest of secured creditors in funds deposited into accounts at depository banks.").

While Maverick may have styled its claim against FNBO as a claim for conversion, the claim at its core embodies a commercial priority dispute between creditors of PJSCC. *See, e.g., Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 579 Pa. 275, 289, 855 A.2d 818, 827 (Pa. 2004) (analyzing conversion claim of purported owner of collateral under priority provisions of Article 9 of the Uniform Commercial Code). Thus, FNBO's priority claim as a deposit taking bank in control of a deposit account to which it has a right of setoff is also superior to Maverick's claims to the proceeds as a creditor of PJSCC. *See, e.g.,* Clark and

Clark, 2 *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 3.11[1] at 3-85 (Rev. ed. Apr. 2010) ("UCC 9-340(a) gives a depository bank's common-law right of setoff priority over a security interest held by another secured party . . . ."); *Bank One, N.A. v. First National Bank of Baird*, Case No. 1:02-CV-100, 2003 WL 22137171 at *4 (N.D. Tex. 2003) (finding that bank in which debtor deposited proceeds from sale of financed collateral had priority to funds deposited in debtor's account at bank even where debtor was depositing funds from kited checks in account).

### III. AS AN ALLEGED TRANSFEREE OF FUNDS FROM A DEPOSIT ACCOUNT, FNBO IS ENTITLED TO RECEIVE THE FUNDS FROM PJSCC'S DEPOSIT ACCOUNT FREE FROM ANY CLAIM OF MAVERICK

While Sections 9-327 and 9-340 of Nebraska's Uniform Commercial Code provide FNBO sufficient statutory protections to defeat Maverick's conversion claim, the protections of Neb. UCC § 9-332 also negate Maverick's conversion claim to the extent Maverick can establish that FNBO was a transferee of the proceeds from the sale of the Maverick Cattle. *See, e.g., Keybank National Assoc. v. Ruiz Food Products, Inc.*, Case No. 04-296-MHW, 2005 WL 2218441 at *7 (D. Idaho 2005) (finding that transferee of deposit account funds takes free of security interest under UCC § 9-332 because of "broad protections for transferees . . . to ensure that security interests in deposit accounts do not impair the free flow of funds").

Maverick argues that there is a factual question as to whether FNBO colluded with "the debtor" as referenced by Neb. UCC § 9-332(b). To the extent that Maverick claims PJSCC is "the debtor" as contemplated by Neb. UCC § 9-332(b), FNBO submits that the overwhelming evidence does not establish any basis for a claim of collusion. At most, Maverick can only show that FNBO was aware of LOL's claim of a security interest in the Maverick Cattle and that Maverick and PJSCC had a dispute as to the amount owed between them. Clearly, knowledge of

these facts does not impede FNBO's statutory rights under the revised Uniform Commercial Code. Neb. UCC § 9-341 and the official comments thereto make this point abundantly clear:

> 9-341 Bank's rights and duties with respect to deposit account.
>
> Except as otherwise provided in section 9-340(c), and unless the bank otherwise agrees in an authenticated record, a bank's rights and duties with respect to a deposit account maintained with the bank are not terminated, suspended, or modified by:
>
> > (1) the creation, attachment, or perfection of a security interest in the deposit account;
> >
> > (2) the bank's knowledge of the security interest; or
> >
> > (3) the bank's receipt of instructions from the secured party.

The official comments to Neb. UCC § 9-341 provide in part:

> This section is designed to prevent security interests in deposit accounts from impeding the free flow of funds through the payment system. Subject to two exceptions, it leaves the bank's rights and duties with respect to the deposit account and the funds on deposit unaffected by the creation or perfection of a security interest or by the bank's knowledge of the security interest. In addition, the section permits the bank to ignore the instructions of the secured party unless it had agreed to honor them or unless other law provides to the contrary. A secured party who wishes to deprive the debtor of access to funds on deposit or to appropriate those funds for itself needs to obtain the agreement of the bank, utilize the judicial process, or comply with procedures set forth in other law. . . .

If all it took to encumber funds deposited at depository institutions was mere knowledge on the part of the depository institution that its customer and a third-party had a dispute over sums due between them, then one can only imagine the chilling effect such a policy would have on a bank's willingness to accept deposits and the disruption that would be caused to the free flow of funds through the payment system. This is precisely why the drafters of the Revised Article 9 and the Nebraska Legislature enacted Neb. UCC §§ 9-327, 940, and 941. A decision against FNBO based upon the allegations made by Maverick would undermine the Legislature's policy

11

objectives insofar as it would subject a depository institution to conversion claims from third parties based upon the bank's acceptance and transfer of funds that were the subject of a priority dispute.

The evidence is undisputed that it was PJSCC's decision not to remit funds from the sale of cattle to Maverick. (FNBO Evidence Index (Filing No. 174) Exhibit 3, 138:24-140:10; Exhibit 9, 52:21-55:16.). FNBO's awareness of PJSCC's decision, and the fact that FNBO may have discussed that decision with PJSCC, does not change the fact that PJSCC did not remit funds to Maverick based upon the advice of PJSCC's own independent counsel. (FNBO Evidence Index (Filing No. 174), Exhibit 9, 52:21-55:16; Exhibit 3, 138:24-140:10.) FNBO's knowledge and awareness of PJSCC's decision is simply insufficient to create a factual question on Maverick's collusion and conspiracy claim against FNBO in light of Nebraska's UCC provisions and the unrebutted evidence that PJSCC did not remit funds to Maverick based upon the advice of PJSCC's counsel, not at the behest of FNBO.[8] *See Ashby v. State*, 279 Neb. 509, 526, 779 N.W.2d 343, 357 (2010) (a conspiracy claimant must be able "to prove the existence of at least an implied agreement . . . to accomplish an unlawful or oppressive object, or a lawful object by unlawful or oppressive means"); *City Bank v. Compass Bank*, No. EP-09-CV96-KC, 2010 WL 1959808 at *14 (W.D. Tex. May 12, 2010) (finding no collusion between the bank and the depositor where proceeds deposited in deposit account and used to pay down line of credit was subsequently drawn upon by the debtor); White & Summers, 4 *The Uniform Commercial Code* § 33-10 (6th ed. 2010) ("Normally knowledge that the payment violates Secured Creditor One's security interest is not enough for 'collusion.'").

---

[8] *See* FNBO Evidence Index (Filing No. 174) Exhibit 9, 30:18-31:2; 46:5-10; 28:25-29:25.

## IV. MAVERICK'S CONSEQUENTIAL DAMAGES CLAIM FAILS AS A MATTER OF LAW BECAUSE IT IS SPECULATIVE.

FNBO has moved for summary judgment on Maverick's consequential damages claim because Maverick has failed to come forward with any admissible evidence supporting its claim for consequential damages. Even after the filing of FNBO's Summary Judgment Motion, Maverick still has not submitted any admissible evidence supporting its consequential damages claim. *See, e.g., Sokol Associates, Inc. v. Technoic Indus., Inc.*, 495 F.3d 605, 611 n.4 (8th Cir. 2007) ("only evidence that would be admissible at trial may be relied upon to counter a motion for summary judgment"); *Calvi v. Knox County*, 470 F.3d 422, 426 (1st Cir. 2006) ("a conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden") (internal citations omitted). Indeed, Maverick has not even filed an Evidence Index in opposition to FNBO's Motion. Instead, Maverick points to a smattering of filings in this case, contending that Maverick lost profits as a result of FNBO's alleged conduct. *See Al Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1036 ("Evidence, not contentions, avoids summary judgment."). Maverick claims that its owner will testify as to Maverick's lost profits but fails to even submit an affidavit or deposition testimony providing either (1) his lost profits calculation, (2) a methodology he intends to utilize to calculate lost profits, or (3) the specific facts upon which he intends to rely in order to calculate Maverick's purported lost profits. Without submitting such evidence in resistance to FNBO's Summary Judgment Motion on this issue, Maverick's speculative claim for lost profits must necessarily fail. *See, e.g., Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) ("the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful").

## CONCLUSION

For the foregoing reasons, FNBO respectfully requests that this Court find that there is no genuine issue of material fact with respect to its claim for summary judgment on Maverick's claims of conversion and conspiracy, and enter summary judgment in its favor on these claims.

Dated this 26th day of October, 2010.

First National Bank of Omaha, Defendant,

By: /s/Thomas O. Kelley_____
William F. Hargens (#16578)
Thomas O. Kelley (#22667)
McGrath North Mullin & Kratz, PC LLO
Suite 3700 First National Tower
1601 Dodge St.
Omaha, Nebraska 68102
(402) 341-3070
(402) 952-1848 fax
whargens@mcgrathnorth.com
tokelley@mcgrathnorth.com

Attorneys for Defendant, First National Bank of Omaha

**CERTIFICATE OF SERVICE**

I certify that on the 26th day of October, 2010, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David A. Domina
ddomina@dominalaw.com

Mark D. Raffety
mraffety@dominalaw.com

Shawn M. Nichols
snichols@cadlaw.com

Steven W. Sanford
ssanford@cadlaw.com

Jonathan C. Miesen
JCMiesen@stoel.com

                                                      /s/Thomas O. Kelley_____
                                                        Thomas O. Kelley